NEKOOSA-EDWARDS PAPER COMPANY, Appellant and Respondent, vs. NEWS PUBLISHING COMPANY, Appellant and Respondent: ALEXANDER, Appellant.

*February 9—May 3, 1921.*

*Corporations: Monopolies: Examination of officers and agents: Privilege against self-incrimination: Character of privilege: Personal and not possessed by corporation: Limitation of actions: Production of books and records.*

1. Secs. 1791*j* to 1791*m*, Stats. 1919—making unlawful any conspiracy on the part of any domestic corporation creating a monopoly or controlling prices, providing that the attorney general shall address inquiries to the officers of any corporation believed to have violated any provision of sec. 1791*j*, and declaring that no person shall be excused from answering any of such inquiries on the ground that the answer may tend to criminate him, but that no person shall be prosecuted or subjected to any penalty or forfeiture on account of any transaction or thing to which he may testify, except that the charter of the offending corporation may be forfeited,—apply only to proceedings by the state against a monopoly. Where a private person pleads as a counterclaim for damages in a civil action for the purchase price of goods that the plaintiff, a corporation, was guilty of creating and maintaining a monopoly, an officer of the corporation is entitled to claim his individual privilege from answering questions which may tend to criminate him.

2. The burden of proof rests on the party denying the privilege against self-incrimination to show affirmatively that the statutes of limitation have run and that no suits begun within the statutory period are pending.

3. A corporation is not a person within the meaning of amendm. V, Const. U. S., sec. 8, art. I, Const. Wis., or sec. 4077, Stats., providing that no person shall be compelled in any criminal case to be a witness against himself, the corporation being only an artificial entity created to carry on the legitimate business of the community; and when a corporation violates the law it violates the purpose of its creation, and is not as an individual entitled to the privilege against self-incrimination.

4. A corporation in an action by a private party entitled to damages because of the violation of sec. 1747*e,* Stats., by the

corporation, cannot lawfully refuse to allow its books and papers to be produced and inspected.

5. A corporation cannot, on the theory that its officers or agents might be incriminated by a disclosure of the corporate records, prevent inspection of corporate books, the immunity against self-incrimination being a personal one, covering the officers and agents alone; and the corporation, having no such immunity, cannot invoke it on behalf of its officers and agents.

APPEALS from orders of the circuit court for Wood county: BYRON B. PARK, Circuit Judge. *Affirmed in part; reversed in part.*

Plaintiff, a corporation, brought an action against the defendant, a corporation, to recover the purchase price of print paper sold it. Defendant admitted plaintiff's cause of action but counterclaimed for damages, alleging upon information and belief that plaintiff was one of a number of paper manufacturing conspirators operating under the name of the "News Print Manufacturers Association" and engaged in creating and maintaining a monopoly in print paper and in creating and maintaining exorbitant prices therefor, contrary to the laws of the state and of the United States, and that by reason of such unlawful monopoly defendant was compelled to purchase its print paper from plaintiff at exorbitant prices to its damage.

The reply put in issue the material allegations of the counterclaim. Defendant then sought to examine *L. M. Alexander,* plaintiff's president, and other of its officers and servants, under sec. 4096, Stats., as to said unlawful monopoly and to have him produce all books, papers, etc., showing or tending to show the true cost of print paper and all evidence or data tending to show plaintiff's membership in the "News Print Manufacturers Association," the organization thereof, and the conduct of its business.

Plaintiff moved for an order perpetually enjoining the defendant from examining the said witness or any of its officers or servants in regard to said alleged monopoly and

from the production of its books, papers, etc., as called for. The court by an order dated May 19, 1920, denied plaintiff's motion so far as it related to the examination of the witnesses and the production of its books and papers showing the actual cost of print paper, but granted it so far as it required it to produce evidence or data with reference to its alleged membership in the News Print Manufacturers Association.

The examination of *Mr. Alexander* followed, and he refused to answer certain questions as to the cost of print paper on the ground that his answer might tend to incriminate him, and because it might tend to subject him to a penalty, claiming his privilege under the constitution and laws of this state and of the United States. For like reasons he refused to produce certain books and papers, etc. The same privilege was duly claimed by counsel for plaintiff in its behalf.

Questions relating to plaintiff's connection with the News Print Manufacturers Association the witness was not required to answer. The commissioner ruled "that a corporation is not a person within the meaning of the constitution of the United States or the constitution of the state of Wisconsin in this behalf in any way under any circumstances." The result was that *Mr. Alexander* was by the commissioner ordered to be in contempt of court and to be committed to the county jail till he purged himself. This ruling was affirmed by an order of the court dated May 28, 1920. The commissioner's ruling that plaintiff need not produce evidence or data with reference to its connection with the News Print Manufacturers Association was by said order of May 28th likewise affirmed.

The plaintiff appealed from so much of the order of May 19th and the subsequent orders requiring the witness *Alexander* to be examined as to the cost of print paper and adjudging him in contempt for refusal to answer and holding that a corporation is not a person within the meaning of

the immunity grants in our state and federal constitutions. The defendant appealed from so much of the order of May 19th and subsequent orders as relieved plaintiff from disclosing its connection with the News Print Manufacturers Association.

For the *Nekoosa-Edwards Paper Company* and *L. M. Alexander* there were briefs by *Goggins, Brazeau & Goggins* of Wisconsin Rapids, and oral argument by *B. R. Goggins.*

*Thomas H. Gill* of Milwaukee, for the *News Publishing Company.*

VINJE, J.  A consideration and decision of the questions presented by plaintiff's appeal will also dispose of the question raised by the defendant's appeal.

Plaintiff claims (a) that sec. 4, ch. 357, Laws 1897, now sec. 1791*m*, Stats. 1919, granting immunity in certain cases, does not relate to or include private suits between private parties, but relates exclusively to prosecutions by the state to suppress unlawful monopoly; (b) that since it does not affirmatively appear that the statutes of limitation have run on the alleged offenses and that suits therefor are not now pending, no disclosures can be compelled; and (c) that a corporation has the same constitutional and statutory immunity from self-incrimination that a person has.  A determination of the soundness of these claims will dispose of all questions necessarily involved in the appeals.

Ch. 357 of the Laws of 1897 was entitled "An act to prevent corporations organized under the laws of this state from entering into any combination, conspiracy, trust, agreement or contract, intended to operate in restraint of any lawful trade or commerce carried on in this state." It contains but four sections besides the one providing when it shall take effect.  These sections with some amendments now appears as secs. 1791*j*, 1791*k*, 1791*l*, and 1791*m* of the Statutes of 1919 under the title Trusts, Pools, and Con-

spiracies. The first section declares unlawful any conspiracy on the part of a domestic corporation creating a monopoly or controlling prices and provides for a forfeiture of its charter upon proof thereof. The second section makes it the duty of the attorney general upon notice, or when he has reason to believe that any corporation has violated any of the provisions of sec. 1 (sec. 1791*j*, Stats.), "forthwith to address to any such corporation or to any director or officer thereof such inquiries as he may deem necessary for the purpose of determining whether or not such corporation has violated any provision of said section." It requires that the corporation make prompt answer to such inquiries, and that upon a failure to do so within sixty days, unless time is extended by the attorney general, it becomes his duty to proceed against the corporation as provided for in the next section, which requires him to bring an action to annul the franchise of the corporation. Then follows the immunity section (sec. 1791*m*, Stats.), which reads:

"No person shall be excused from answering any of the inquiries herein provided for, nor from attending and testifying, nor from producing any books, papers, contracts, agreements or documents in obedience to a subpœna issued by any lawful authority in any case or proceeding based upon or growing out of any alleged violation of any of the provisions of section 1791*j*, or of any law of this state in regard to trusts, monopolies or illegal combinations on the ground of or for the reason that the answer, testimony, evidence, documentary or otherwise, required of him may tend to criminate him or subject him to a penalty or forfeiture; but no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may answer, testify or produce evidence, documentary or otherwise, in obedience to any request under these provisions or any subpœna, or either of them, in any case or proceeding, except that the charter of any corporation may be vacated and its corporate existence annulled as hereinbefore provided, and except further, that no person testifying in any case or proceeding aforesaid

shall be exempt from punishment for perjury committed in so testifying."

It is quite apparent that the whole scheme of the chapter and the section of the statutes as amended concerns prosecutions by the state for a violation of sec. 1791*j* or of any other law of the state relative to trusts. All the sections were enacted in one act and relate to state control over trusts. The words of sec. 1791*m* that "No person shall be excused from answering any of the inquiries herein provided for," clearly refer to inquiries propounded by the attorney general as required by sec. 1791*k*. And the words in the latter part of sec. 1791*m*, "except that the charter of any corporation may be vacated and its corporate existence annulled as hereinbefore provided," also show that a state proceeding is contemplated. In addition to the reasonably clear import of the sections gathered from their language, there is the further reason that the immunity granted by sec. 1791*m* should be permitted only at the option of the state. To allow it to be invoked in private suits involving perhaps only a small sum in damages or in penalties would result in granting immunity baths to corporations at the instance of private parties, perhaps friendly parties, and thus prevent the state from proceeding against them for violations of trust laws.

Not only the language of the sections and the reasons above suggested lead to the conclusion that the immunity relates only to state proceedings, but decided cases in other jurisdictions strengthen it, for the reason that in all cases called to our attention where the privilege has been denied it has been in cases where the sovereign has exercised its visitorial powers or in cases for the enforcement of penalties where the state has expressly granted immunity. That the offense charged in the counterclaim is one that comes within the constitutional privilege there can be no doubt: *Karel v. Conlan,* 155 Wis. 221, 232, 144 N. W. 266.

Nekoosa-Edwards P. Co. v. News Publishing Co. 174 Wis. 107.

It appears from the counterclaim that February 15, 1917, is the date of plaintiff's last transaction with the defendant, and it claims that the statutes of limitation have run on the alleged offense and therefore plaintiff is not entitled to its privilege. The difficulty with the claim is that the record is silent as to whether or not suits have been begun within the statutory period and are still pending. The burden of proof rests upon the party denying the privilege to show affirmatively that the statutes have run and that no suits begun within the statutory period are pending. *Lamson v. Boyden,* 160 Ill. 613, 43 N. E. 781; *Southern R. N. Co. v. Russell,* 91 Ga. 808, 18 S. E. 40; *Bank of Salina v. Henry,* 2 Denio, 155, 160; *Henry v. Bank of Salina,* 1 N. Y. 83, 87. The latter defendant has failed to do, hence it is not necessary to determine what statutes of limitation apply or whether the offense is such a continuing one, as plaintiff claims it to be, that no statute has yet run.

The court therefore erred in holding that the witness *Alexander* could not claim his constitutional privilege and that he was in contempt of court for failure to answer the questions propounded to him.

It remains to consider and determine the question whether a corporation is a "person" within the immunity privilege of the constitution of the United States, or of this state, or statutes thereunder.

The Fifth amendment to the United States constitution provides, "No person . . . shall be compelled in any criminal case to be a witness against himself." Sec. 8, art. I, of our constitution is identical in language, and sec. 4077, Stats. 1919, providing that a witness cannot refuse to answer on the ground that it may subject him to a civil liability, says: "But this provision shall not be construed to require a witness to give any answer which shall have a tendency to accuse himself of any crime or misdemeanor or to expose him to any penalty or forfeiture."

Since a corporation is created for legitimate business purposes, it follows that in the exercise of that purpose it should have all the constitutional prerogatives incident thereto. Thus it has been held to be within the due process of law clause of the Fourteenth amendment to the federal constitution. *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, 119 N. W. 309, 120 N. W. 756; *Northwestern M. L. Ins. Co. v. State,* 163 Wis. 484, 155 N. W. 609, 158 N. W. 328.; *Covington & L. T. R. Co. v. Sandford,* 164 U. S. 578, 17 Sup. Ct. 198; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418. It has also been held to be within the equal protection of the law clause of the same amendment. See cases above cited. It has been held to be within the provision against double jeopardy. *Shevlin-Carpenter Co. v. Minnesota,* 218 U. S. 57, 30 Sup. Ct. 663. The provision of art. I, sec. 13, of our constitution, that "the property of no person shall be taken for public use without just compensation," includes that of a corporation. *Linden L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 83 N. W. 851. So a corporation has been held to be a citizen (*Norwich P. Co. v. Abaly,* 133 Wis. 530, 113 N. W. 963) and a resident (*Shaw v. Quincy M. Co.* 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768; 14 Corp. Jur. 66). And sub. (12), sec. 4971, Stats. 1919, provides that "the word 'person' may extend and be applied to bodies politic and corporate as well as to individuals."

The illustrations given relate to the legal status of a corporation respecting its property rights in the lawful exercise of its functions or as to being required twice to answer the same criminal charge. In such cases persons and individuals stand upon an equal footing. But as will be pointed out hereafter, when it comes to self-incrimination the reasons that give rise to personal immunity do not apply, at least not in the same degree, to corporations. The revolt from the torture chamber and the horrors of the Spanish Inquisition led to the more humane rule that no person should

be compelled to incriminate himself.   It was a radical reaction from abuses that now reappear in a milder form in the so-called "third degree" examination which has no place in our criminal jurisprudence.   It is clear, therefore, that the word "person" includes a corporation where a corporation is within the purpose of the provision, constitutional or statutory, and the reasons for including it are the same, or substantially so, as those that relate to a person.

But it will not be held to be included where it is not within the purpose and intent of the provision.   14 Corp. Jur. 67. Is a corporation within the intent and purpose of the Fifth federal amendment?   In *McCulloch v. Maryland,* 4 Wheat. 317, 411, we find this significant language of Chief Justice MARSHALL: "The power of creating a corporation is never used for its own sake, but for the purpose of effecting something else."   What is that something else?   Obviously it is the transaction of lawful business.   And it is equally obvious that the corporation is thus created for the primary benefit of the state and not for that of the corporation itself.   The state creates this corporate entity because the business needs of the public, the state, are thereby promoted.   The moment a corporation becomes an injury to the public it has no valid reason for existence, because the object for which it was created has not only been thwarted but the creature has become an instrument of evil.   It is otherwise with a natural person.   He is created for his own existence, and not for a mere business purpose.   He has certain inalienable rights such as "life, liberty, and the pursuit of happiness."   He may transgress the law and yet his right of being remains inviolate except in cases of capital punishment.   He is a natural entity enjoying the faculties, rights, and privileges with which he is endowed, and the basic law says he shall not be compelled to make declarations that will forfeit them, because he is not a mere instrument for a specific business purpose.   He has his hopes, his aspirations, his desires, and

his weaknesses—he *lives;*—a corporation merely exists, and that in an artificial way for a single purpose. Paraphrasing Shakespeare it can be said, "Hath not a guilty man eyes? Hath not a guilty man hands, organs, dimensions, senses, affections, passions? Fed with the same food, hurt with the same weapons, subject to the same diseases, healed by the same means, warmed and cooled by the same winter and summer as an innocent man is?" Having, then, these sensibilities and faculties which constitute the essence of a natural person, there is an underlying reason for not requiring self-incrimination from him which does not exist in the case of a corporation. There is no "personal" death or loss of liberty in the annulment of a corporate franchise or in a judgment for damages against it. When, therefore, it undertakes to do that which the law forbids and which injures the public, it has no claim for mercy that needs be recognized.

Hence if a corporation has made a record by its books or papers that shows it has violated the purposes for which it was created, why should not the state which gave it birth for legitimate business purposes only have the right, either directly in the exercise of its inquisitorial powers or indirectly through one damaged by such unlawful conduct of the corporation, to inspect the record thus made?

It has been generally held that at the suit of the state a corporation is not immune from self-incrimination because it is not a "person" within the meaning of the Fifth amendment to the federal constitution. 8 Thompson, Corp. (2d ed.) § 3280; *Hale v. Henkel,* 201 U. S. 43, 26 Sup. Ct. 370; *Nelson v. U. S.* 201 U. S. 92, 26 Sup. Ct. 358; *Bornn H. Co. v. U. S.* 184 Fed. 506, affirmed 223 U. S. 713, 32 Sup. Ct. 521; *Hammond P. Co. v. Arkansas,* 212 U. S. 322, 348, 29 Sup. Ct. 370; *Wilson v. U. S.* 221 U. S. 361, 382, 31 Sup. Ct. 538; *Dreier v. U. S.* 221 U. S. 394, 31 Sup. Ct. 550; *Grant v. U. S.* 227 U. S. 74, 33 Sup. Ct. 190. See, also, *Horlick's M. M. Co. v. A. Spiegel Co.* 155 Wis. 201,

213, 144 N. W. 272; *In re Moser,* 138 Mich. 302, 101 N. W. 588; *Consolidated R. Co. v. Vermont,* 207 U. S. 541, 28 Sup. Ct. 178.

Has the corporation immunity except in a direct action by the state? Sec. 1747*c,* Stats. 1919, provides:

"Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. Every person who shall combine or conspire with any other person to monopolize or attempt to monopolize any part of the trade or commerce in this state shall forfeit for each such offense not less than fifty dollars nor more than three thousand dollars. Any such person shall also be liable to any person transacting or doing business in this state for all damages he may sustain by reason of the doing of anything forbidden by this section."

It will thus be seen that, in addition to the penalties exacted by the state, it gives to any person doing business in this state the right to collect "all damages he may sustain by reason of the doing of anything forbidden by this section." The giving of such right implies the means of enforcing it. *McCulloch v. Maryland,* 4 Wheat. 317, 411. The conferring of a right without a remedy is but an empty gift. It cannot have been the legislative intent to deprive the person damaged by the transgressing corporation of practically the only means of proving his damage, namely, by an inspection of the books of the corporation, in order that the corporation might not only escape the lawfully prescribed penalty but also enable it to continue to violate the law. It is significant that sec. 1797*m,* providing for an immunity, excepts therefrom the annulment of the corporate charter. Such exception must be founded upon the ground that it is contrary to public policy to permit an offending corporation to continue to do business because of its likelihood of again transgressing the law and because a corporation that wilfully violates the law to the public hurt has no legal or moral right to exist. The penalty by way of dam-

ages to the injured person is a statutory penalty granted and sanctioned by the state, and it is to its interest that it should be enforced because such enforcement tends to keep corporations within the law. We thus find that a private party in enforcing a statutory penalty given it can require the production and inspection of the corporate books and papers to prove the violation of the statute. *American L. Co. v. Werckmeister,* 221 U. S. 603, 31 Sup. Ct. 676. It would seem to follow logically that since a corporation is not within the constitutional immunity it cannot, at the suit of a private party entitled under the statute to collect damages from it, invoke as a shield that which it does not possess, namely, immunity from self-incrimination. So we reach the conclusion that a corporation at the suit of a private party entitled by the statute to damages cannot lawfully refuse to allow its books and papers to be produced and inspected.

It is well established by the cases cited to the main proposition that a corporation is not within the constitutional immunity granted by the Fifth amendment that the requiring the production of its books constitutes no violation of the Fourth amendment prohibiting unreasonable searches and seizures.

It has also been held that the fact that the compelled disclosure of the corporation may incriminate its officers or agents does not render it or them immune. 8 Thompson, Corp. (2d ed.) § 3280; *American L. Co. v. Werckmeister,* 221 U. S. 603, 31 Sup. Ct. 676; *Dreier v. U. S.* 221 U. S. 394, 31 Sup. Ct. 550; *Grant v. U. S.* 227 U. S. 74, 33 Sup. Ct. 190; *Wilson v. U. S.* 221 U. S. 361, 31 Sup. Ct. 538. In the latter case it is said:

"The appellant [an officer of the corporation] held the corporate books subject to the corporate duty. If the corporation were guilty of misconduct, he could not withhold its books to save it; and if he were implicated in the violations of law, he could not withhold the books to protect himself from the effect of their disclosures." Page 384.

A corporation can act only through its officers and agents, hence if their immunity protected the corporation it would need none of its own. Their immunity, however, is a personal one, which covers them alone and not the corporation. It must stand on the strength of its own constitutional rights or fall by reason of the lack of them, and its officers and agents must realize, when they confide to its keeping facts which disclose its unlawful conduct, that they thereby voluntarily disclose their own delinquencies. They must realize also that the state, both directly and indirectly, may rightfully inquire into the lawfulness of its business methods, and may either mulct it in damages or destroy it because of doing that which the law forbids. In granting a corporate franchise the state creates no Frankenstein monster, but a creature subservient to its best interests, whose wrongful conduct may be punished by the payment of damages or by corporate death at the election of its creator.

It follows that the court erred in not sustaining the objections to the questions propounded to the witness *Alexander* in his individual capacity, and in sustaining the objections to the production of the corporate books and papers showing plaintiff's connection with the News Print Manufacturers Association; and that it rightfully held the corporation was not within constitutional or statutory immunities.

*By the Court.*—Upon the plaintiff's appeal the orders requiring the witness *Alexander* to be examined in his individual capacity as to the cost of print paper are reversed. The order holding that a corporation is not a person within the meaning of the immunity grants of our state and federal constitutions is affirmed. Upon defendant's appeal the order excusing the production of corporate books and data to show plaintiff's connection with the News Print Manufacturers Association is reversed, without costs to either party. Plaintiff will pay the clerk's fees.

ESCHWEILER and DOERFLER, JJ., took no part.