[Criminal No. 306.   Filed July 6, 1912.]

[125 Pac. 702; 42 L. R. A., N. S., 975.]

## TERRITORY OF ARIZONA, Appellant, v. VICTOR GOMEZ, Respondent.

1. ASSAULT AND BATTERY—CRIMINAL OFFENSES—ELEMENTS—"DEADLY WEAPON."—Whether a person pointing a cocked pistol at another in an angry and threatening manner is guilty of assault with a "deadly weapon" depends on whether or not the pistol was loaded, where accused was not within striking distance of the other party. In such case accused has burden of proving gun was unloaded.

2. ASSAULT AND BATTERY—CRIMINAL OFFENSES—QUESTIONS FOR JURY. Where the evidence showed that accused pointed a cocked pistol at the prosecuting witness in an angry and threatening manner, whether or not the pistol was loaded so as to make accused guilty of assault with a deadly weapon was a question for the jury.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Yavapai. Edward M. Doe, Judge. Reversed.

The facts are stated in the opinion.

Mr. G. P. Bullard, Attorney General, for Appellant.

No appearance for Respondent.

FRANKLIN, C. J.—The defendant was indicted for assault with a deadly weapon. From a judgment of acquittal the territory appeals on the questions of law.

In criminal actions the territory (now state) may appeal to the supreme court on questions of law alone. It is so provided by paragraph 1038 of the Penal Code of Arizona of 1901. This is such an appeal. The determination of this appeal can, of course, have no effect on the acquittal of the defendant, which is a bar to any further prosecution.

The appeal is predicated upon the following state of facts, recited in the brief of the attorney general, to wit:

"The defendant was indicted for an assault with a deadly weapon committed upon one J. E. Mahurin on July 9, 1910, in Yavapai county, Arizona. Mahurin and his wife were driving from their home to Del Rio, when they saw defendant herding a band of sheep upon Mahurin's homestead, whereupon the Mahurins drove off the road and in the direction of defendant some fifty to seventy feet. Mahurin then asked defendant whose sheep he had, and the defendant said, 'I no sabe.' Mahurin then said, 'Yes, you do. Aren't they Ben Yeager's?' and at the same time got out of his buggy, saying to defendant, 'Here is my corner post,' and asked defendant to keep the sheep off his land. At this time defendant drew his pistol, cocked it, and pointed it at Mahurin, and advanced toward Mahurin from a distance of about sixteen feet to within six feet, saying, 'Qui dado, qui dado.' Mrs. Mahurin, discovering the imminent danger in which her husband was, said to him, 'Come and get in the buggy, quick, he is going to shoot you.' Mahurin, looking at defendant, who was then pointing a pistol at him and advancing toward him, said, 'Don't shoot, I am not going to hurt you,' and retreated into

his buggy.   As the Mahurins drove away, the defendant re-
turned the pistol to his scabbard.   Both Mr. and Mrs. Ma-
hurin said that defendant cocked the pistol, and held it on
Mahurin until he got into his buggy, saying all the time 'Qui
dado, qui dado.' "   The exclamation "Qui dado, qui dado,"
being interpreted, means "Look out! Look out!"

At the close of the evidence, the defendant's counsel moved
for an instructed verdict of acquittal on the ground that
"there had been no assault with a deadly weapon proved."
The motion was granted, the court observing: "It is a some-
what interesting case, but, under the evidence of the case, I
am convinced that a conviction could not be sustained on a
technical ground"—this observation on the part of the court
evidently referring to the failure of the evidence to disclose
any direct or visual proof that the pistol used at the time
of the alleged assault was, in fact, loaded.

The territory assigns error: "(1) The court erred in hold-
ing that the pointing of a cocked pistol within six feet of the
prosecuting witness in an angry and threatening manner and
until the latter returned to his seat in the buggy, advancing
on the prosecuting witness all the time, saying, 'Qui dado, qui
dado!' (Look out! Look out!), was not an assault with a
deadly weapon.   (2) The court erred in directing the jury to
return a verdict of not guilty under the evidence in this
case."

In the adjudicated cases there is a sharp conflict of opinion
as to whether the pointing of a firearm at another within
shooting distance, in an angry and threatening manner, con-
stitutes an assault with a deadly weapon, if there is no proof
in the case that at the time of the alleged assault the fire-
arm was in fact loaded.   In *State* v. *Godfrey,* 17 Or. 300,
11 Am. St. Rep. 830, 20 Pac. 625, the evidence of the assault
tended to prove that the defendant, when not less than thirty
yards nor more than seventy yards, pointed a Winchester rifle
at a man, and threatened to kill him if he did not turn back.
There was no direct evidence that the rifle was loaded, or that
the defendant cocked the trigger, or did anything except to
point the rifle and express the threat.   The court held that
under such circumstances it was for the jury to determine
the character of the weapon under appropriate instructions,
saying: "Some weapons under particular circumstances are

so clearly lethal that the court may declare them to be such as a matter of law. Of this class are guns, swords, knives, pistols and the like, when used within striking distance from the victim. All other are lethal or not according to their capacity to produce death or great bodily harm in the manner in which they are used, and of this the jury must always be the judges. It is a matter of fact the termination of which belongs to them. In the case under consideration the gun was a lethal weapon if it was loaded, otherwise it was harmless. It was therefore the peculiar and exclusive province of the jury to say whether this was so or not, and the court erred in so refusing to instruct them.'' In the case of *State* v. *Herron,* 12 Mont. 230, 33 Am. St. Rep. 576, 29 Pac. 819, the supreme court of Montana, after reviewing many of the authorities, say: ''Although there is a division of views in the decided cases, we think that the better opinion is that, if a firearm is the alleged deadly weapon—a weapon the only ordinary use of which is by its being loaded—if it be pointed at the complainant in a threatening manner, if defendant makes threats to shoot, if the circumstances are such as would exist if one were using a loaded gun—in short, that if all the elements of the offense be made out, as required by the criminal laws and procedure, except the direct, we may say visual, proof that the weapon is loaded—under these circumstances, a direction to the jury to acquit is error, and the fact that the gun was unloaded (if such be the fact) is a matter of defense. Such view seems to be held by the weight of authority, and such is the only practical view in the enforcement of the statute in reference to assaults with deadly weapons of this character.''

We approve the doctrine as quoted from the Montana court. If the pistol was unloaded, unless it was used within striking distance of the person of another, it was harmless; if loaded, or, if used within striking distance, it was of a deadly character. In either view, however, the court, with appropriate instructions, should have submitted the matter to the jury to determine under all the evidence of the case. A verdict of guilty as charged in the indictment if returned by the jury under the facts of this case would not be disturbed as unsupported by the evidence. Any other rule would practically prohibit the enforcement of the statute provided for

punishing an assault with a deadly weapon under such a state of facts and circumstances as here presented.

It is not the purpose of this court to draw nice distinctions and announce a technical rule when such a technicality could only have the effect of encouraging the bully to intimidate whom he pleases with a show of apparent deadly force and escape a merited punishment for his unlawful act, thus embarrassing the due administration of justice.

We are of the opinion that the court erred as a matter of law in not submitting the case to the jury under appropriate instructions.

CUNNINGHAM, J., concurs.

ROSS, J., being disqualified and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the constitution, called in Hon. FRANK J. DUFFY, Judge of the superior court of the state of Arizona in and for the county of Santa Cruz, to sit with them in the hearing of this cause.

DUFFY, J., Dissenting.—I do not approve the doctrine laid down by the supreme court of Montana in the case above cited. To hold, as in that case, that "the fact that the gun was unloaded (if such be the fact) is a matter of defense," is to put upon the defendant the burden of proving his innocence, because it compels him to prove the nonexistence of one of the material elements of the offense, viz., the present ability to carry into effect the unlawful attempt to injure. As defined by our statute, assault "is an unlawful attempt coupled with a present ability to commit a violent injury upon the person of another." To constitute the crime of assault, there must be the unlawful attempt to commit a violent injury upon the person of another, and with the making of such attempt there must be coexistent the ability to carry such attempt into execution; i. e., to commit the injury. Each is a necessary element of the crime, and both must concur. If either one is missing, the accusation fails. Each then is a necessary allegation of the indictment. Both must be alleged, and the existence of each must be established by competent evidence beyond a reasonable doubt. When the weapon used is a pis-

tol, to presume, or infer, or take for granted that the pistol is loaded is to presume the existence of one of the material elements òf the offense, and to assume the truth of a material allegation of the indictment; in other words, it presumes the guilt of the defendant, and compels him to prove his innocence by proving the nonexistence of one of the material elements of the offense, to wit, the ability to inflict the injury.

In the case at bar there is no evidence whatever to prove that the weapon in the manner in which it was used was capable of producing death or great bodily injury. There is no evidence whatever, except the mere naked fact of the existence of the weapon, that at the time of the alleged assault the defendant possessed the ability to commit the violent injury essential to constitute the offense. The weapon may or may not have been loaded, and therefore the present ability essential to complete the commission of the crime may or may not have existed, but this court is not warranted, and neither was the lower court nor the jury warranted, in presuming such ability to exist. To do so is to presume the existence of one of the material elements of the offense, and therefore to presume the truth of a material allegation of the indictment.

Under the evidence submitted in this case, the jury would not have been warranted in finding a verdict of guilty, and the trial court was therefore justified in directing a verdict of acquittal.

---

NOTE.—The authorities on the question whether pointing an unloaded firearm constitutes an assault are reviewed in a note in 15 L. R. A., N. S., 1272.

As to what weapons may be considered deadly under law of homicide and assault, see note in 21 L. R. A., N. S., 497.

As to what constitutes a deadly weapon, see note in Ann. Cas. 1912A, 1328.

See *State* v. *Miller, post,* p. 440, 130 Pac. 891.

As to right of appeal by state in criminal actions on questions of law alone.—REPORTER.