[Criminal No. 553.  Filed November 3, 1924.]

[229 Pac. 939.]

## EDD LEE, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—FACT THAT COPY OF COMMITMENT WAS NOT ON FILE IN SUPERIOR COURT WHEN INFORMATION WAS RETURNED HELD NOT REVERSIBLE ERROR. — Fact that copy of commitment, within Penal Code of 1913, paragraphs 872–897, as authorized by Constitution, article 2, section 30, was not on file in superior court at time information was returned, *held* not ground for reversal, in view of paragraph 1170; error being at most a technical one.

2. INDICTMENT AND INFORMATION—INFORMATION CHARGING ASSAULT WITH DEADLY WEAPON BASED ON COMMITMENT FOR ASSAULT WITH INTENT TO COMMIT MURDER, HELD NOT TO PREJUDICE AC-

CUSED.—While crime of assault with deadly weapon is not degree of assault with intent to commit murder, commitment for latter offense *held* sufficiently to describe the former, so that information based thereon for assault with a deadly weapon could not possibly mislead or prejudice accused.

3. HOMICIDE—INFORMATION ALLEGING INSTRUMENT USED WAS DEADLY WEAPON HELD SUFFICIENT ALLEGATION OF LETHAL CHARACTER OF WEAPON. — Information charging assault with a deadly weapon with intent to commit murder, which alleged that instrument used was deadly weapon, sufficiently alleged lethal character of weapon.

4. CRIMINAL LAW—OFFICER'S REMARK ACCUSED AND HIS COMPANIONS FIRED SHOTS TO PREVENT APPREHENSION HELD PART OF RES GESTAE.—Where shots were fired in dark by accused and his companions to prevent their apprehension by officers pursuing them, remark of one officer at time of shooting that "they were shooting back to scare us from following" *held* part of *res gestae.*

5. CRIMINAL LAW—OFFICERS' ACT IN TAKING ACCUSED'S SHOES TO COMPARE THEM WITH TRACKS HELD NOT VIOLATION OF CONSTITUTIONAL RIGHT AGAINST SELF-INCRIMINATION.—Officers' act in taking accused's shoes to compare them with tracks found leading to place where he was arrested *held* not to violate constitutional right against being compelled to give evidence against oneself, in absence of showing he objected to shoes being taken for that purpose.

6. CRIMINAL LAW — WITNESSES COMPARING ACCUSED'S SHOES AND TRACKS SHOULD HAVE BEEN CONFINED TO OBSERVED FACTS, LEAVING DEDUCTIONS FOR JURY.—Witnesses who made comparisons of accused's shoes with certain tracks found leading to place where he was arrested should have been permitted to state only facts observed by them, as size of tracks as compared with shoes, peculiarities of shoes indicated in tracks, etc., leaving deductions to be drawn by jury.

7. CRIMINAL LAW—SUPREME COURT CANNOT EXCLUDE EVIDENCE RECEIVED WITHOUT OBJECTION.—Supreme Court cannot exclude evidence received without objection, even though it should have been excluded.

8. CRIMINAL LAW—THAT COURT DID NOT INFORM JURY WHAT ISSUES WERE HELD NOT REVERSIBLE.—That court did not inform jury that defendant's plea of not guilty presented issues triable and tried *held* not reversible.

3. See 13 R. C. L. 803.　4. See 10 R. C. L. 978.

5. Admissibility against accused of documents or articles taken from him, see notes in 59 L. R. A. 465; 8 L. R. A. (N. S.) 762; 34 L. R. A. (N. S.) 58; L. R. A. 1915B, 834. See, also, 8 R. C. L. 195; 13 R. C. L. 927.

9. HOMICIDE — ACCUSED, CHARGED WITH ASSAULT WITH DEADLY WEAPON, A FIREARM, HAS BURDEN OF PROVING WEAPON WAS UNLOADED.—Where accused is charged with assault with a deadly weapon, a firearm, he has burden of showing weapon was unloaded, to sustain his defense that no assault was committed.

10. HOMICIDE — INSTRUCTION IN PROSECUTION FOR ASSAULT WITH DEADLY WEAPON HELD NOT ERRONEOUS.—Instruction that information charged assault with deadly weapon to murder officer, and that accused might be found guilty thereof, if evidence warranted it, *held* not improper, especially where, in instant case, weapon, a firearm, was discharged, seriously wounding officer.

11. HOMICIDE — INSTRUCTIONS DEFINING ASSAULT WITH DEADLY WEAPON HELD NOT PREJUDICIAL.—Where information charged assault with deadly weapon, instrument used being certain firearm loaded with powder and ball, instruction defining such offense, as given in Penal Code of 1913, paragraph 219, *held* not prejudicial for including phrase "or by any means or force likely, to produce great bodily injury."

12. CRIMINAL LAW—INSTRUCTIONS ARE TO BE TAKEN AS WHOLE.—Instructions must be taken as a whole, and not piecemeal.

13. CRIMINAL LAW—DEFINITION OF ASSAULT WITH DEADLY WEAPON HELD NOT ERRONEOUS, AS OMITTING ELEMENT OF PRESENT ABILITY TO COMMIT VIOLENT INJURY, IN VIEW OF OTHER INSTRUCTIONS.—Instruction defining assault with a deadly weapon *held* not erroneous as omitting to include element of present ability to commit violent injury or great bodily injury on person of another with deadly weapon, in view of instructions read as a whole.

14. CRIMINAL LAW—INSTRUCTION HELD NOT TO AUTHORIZE CONVICTION ON PROOF OF MERE FACT OF HAVING FIRED GUN.—Where, in prosecution for assault with deadly weapon with intent to murder A, an officer, accused denied shooting, and claimed A was wounded by accidental shot discharged by another officer, instruction that jury must find, beyond reasonable doubt, that accused fired gun that wounded A before they could convict accused, *held* not to require reversal, as authorizing conviction on mere fact of having fired gun, in view of other instructions as to intent, design, or purpose.

15. HOMICIDE—INSTRUCTION HELD AS FAVORABLE TO ACCUSED AS FACTS JUSTIFIED.—In prosecution for assault with deadly weapon with intent to murder officer, instruction that it was duty of jury to return verdict of not guilty if they had reasonable doubt whether accused or some other person fired gun that wounded officer, *held* as favorable for accused as facts justified.

---

9. Burden of proving, in prosecution for assault with firearm, that weapon was not loaded, see note in 42 **L. R. A. (N. S.)** 975.

16. CRIMINAL LAW — ACCUSED CANNOT COMPLAIN OF INSTRUCTIONS GIVEN AT HIS REQUEST.—Accused cannot complain of instructions given at his request.

17. CRIMINAL LAW—SUBSTANTIAL COMPLIANCE WITH STATUTE RELATING TO ARRAIGNMENT FOR JUDGMENT HELD SUFFICIENT.—Substantial compliance with Penal Code of 1913, paragraph 1123, the purpose of which, as shown by paragraph 1124, is to accord accused final opportunity to defer or defeat final sentence, is sufficient, so that, where court clearly stated nature of charge in information, and also other facts required by statute, erroneous statement of date of filing of information was not material.

See (1) 17 C. J., p. 368.   (2) 31 C. J., p. 631.   (3) 5 C. J., p. 768. (4) 16 C. J., p. 579.   (5) 16 C. J., p. 569.   (6) 16 C. J., p. 754. (7) 17 C. J., p. 56.   (8) 16 C. J., p. 963.   (9) 5 C. J., p. 779. (10) 5 C. J., p. 795.   (11) 17 C. J., p. 339.   (12) 16 C. J., pp. 1049, 1050.   (13) 16 C. J., p. 1050.   (14) 5 C. J., p. 798; 16 C. J., p. 1050. (15) 17 C. J., p. 359.   (16) 17 C. J., p. 210.   (17) 16 C. J., p. 1295.

APPEAL from a judgment of the Superior Court of the County of Graham. Alfred C. Lockwood, Judge. Affirmed.

Mr. D. L. Cunningham, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

ROSS, J.—The appellant, with J. B. Evans and Lloyd Evans, was charged by information with the crime of assault with a deadly weapon with intent to commit murder.

The evidence shows that on the night of September 29, 1921, Sheriff Skaggs, of Graham county, and two deputies, Will Mangum and S. I. Allred, went to a place near Artesia, in said county, for the purpose of seizing an illicit still and arresting the persons operating the same. The officers were joined by one Sparks and proceeded up a wash to a point within a few yards of the still. The still was in operation and two men were standing

near it, one of whom, it is claimed, was the appellant. While the officers were watching the still, someone at or near it said: "Put out the fire; someone is coming up the wash." The fire was put out and the two men at the still started to run. The officers and Sparks attempted to follow the fleeing men, Allred and Mangum bearing to their right and Sheriff Skaggs and Sparks to the left. Allred was about twenty feet ahead of Mangum, and as he reached a point opposite a mesquite tree he heard a noise behind the tree and stopped and pulled his gun. Just as he did this he was shot in the left leg. After the shot was fired, a man ran from behind the mesquite tree going in a southerly direction. Shortly afterwards two more shots were fired through the brush. A few minutes after the shooting the dogs at Bunyan (E. L.) Evans' house began barking and continued to bark for a few minutes. Next morning the officers found tracks behind the tree from where Allred was shot, which tracks led from the tree towards Evans' house. A short distance from the tree the tracks of another man joined those coming from the tree. These tracks were later joined by the tracks of two more men, and were all traced directly to Evans' house. The morning after the shooting the officers arrested appellant, one Floyd Campbell, and the two Evanses, father and son, at or near the Evans house. Appellant's shoes were removed and fitted into the tracks by the mesquite tree and those leading from the mesquite tree to the Evans house. The shoes had holes in the soles and all of the tracks showed the impression of these holes.

It appears that the appellant and the other defendants had a preliminary trial October 3, 1921, and were bound over to the superior court. On that day an order of commitment for assault with intent to commit murder was duly entered in the docket of

the justice of the peace, but no certified copy thereof was transmitted, with the other papers, to the clerk of the superior court. On the same day the county attorney filed an information in the superior court charging the appellant and the two Evanses with an "assault upon the person of S. I. Allred, by shooting the said S. I. Allred, with the intent to kill and murder the said S. I. Allred." On October 4th defendants pleaded not guilty to this information and the case was set down for trial for October 21st, which order was later vacated and the case reset for October 25th. On October 21st another information was filed against defendants, charging them with an assault upon Allred "with a deadly weapon, to wit, a certain firearm loaded with powder and ball, with intent . . . to kill and murder the said S. I. Allred." On October 25th the defendants' motion to set aside the information of October 3d, on the ground that they had not been bound over, was granted. On the same day a like motion by defendants directed at the information filed October 21st was denied. Before the last motion was passed upon a copy of the order of commitment made by the justice of the peace on October 3d was ordered filed in the superior court. The demurrer of defendants that information did not state the public offense of assault with a deadly weapon was overruled. Appellant, on the trial, denied shooting Allred and contended that he was accidentally shot by Deputy Sheriff Mangum. He was convicted of an assault with a deadly weapon and sentenced to serve from two and one-half to five years in the state prison. He appeals from the order overruling his motion for a new trial and from the judgment of conviction.

The first, second and fourth assignments are in effect: (1) That the appellant had no preliminary

trial upon a charge for assault with a deadly weapon
and was not bound over to answer any such charge;
(2) that no commitment to answer the charge of
assault with a deadly weapon, with intent to com-
mit murder, had been filed in the superior court; and
(3) that the information failed to state facts suffi-
cient to constitute the public offense of assault with
a deadly weapon. It is undisputed that appellant
had a preliminary examination and that the com-
mitting magistrate entered an order holding appel-
lant to the superior court to answer for the crime
of an assault with an intent to commit murder,
before the filing of either of the informations. The
commitment holding appellant was not by name for
the crime of an "assault with a deadly weapon,"
nor was it lodged with the clerk of the superior
court at the time the county attorney filed the in-
formation of October 3d or the one of October 21st.

The Constitution, in section 30 of article 2, re-
quires that a preliminary examination be given in
all felony cases; and the statute, paragraphs 872–897,
inclusive, of the Penal Code, provides what shall
be done by the committing magistrate on a prelim-
inary examination. Paragraph 885, Id., after pre-
scribing the form of order the committing magis-
trate should make upon holding an accused, further
provides that:

"When a defendant has been examined and com-
mitted as heretofore provided in this section, it
shall be the duty of the county attorney, within
thirty days thereafter, to file in the superior court
of the county in which the offense is triable, an in-
formation charging the defendant with such of-
fense."

We find nothing in the statutes that forbid the
filing by the county attorney of information before
a copy of the order of commitment has been filed

with the clerk, or requiring him to wait until such copy is filed.

In *State* v. *Fertig,* 14 Ariz. 540, 133 Pac. 99, and *Solice* v. *State,* 21 Ariz. 592, 193 Pac. 19, it was held by this court that the county attorney in filing the information against the accused was acting in a ministerial capacity and should set out in the information the offense for which the accused was held to answer by the committing magistrate. In the Solice case, it was stated that an information charging any of the degrees of a specified offense fell within the order of commitment.

While the appellant was not held to answer the charge of assault with a deadly weapon, he was held for the higher and more serious offense of an assault with intent to commit murder. These offenses are both against the person. They differ principally in that the element of the specific intent must concur with the act to constitute an assault with intent to commit murder. This offense may not always be committed with a deadly weapon, but that it is committed more often with such instrument than with any other means is well known. The two offenses are of the same general character or nature. Our statutes defining these offenses are taken from the California statutes. In *People* v. *Pape,* 66 Cal. 366, 5 Pac. 621, it is said:

"It is not contended by appellant but that the information sufficiently charges an assault with intent to murder. The jury found the defendant (appellant) guilty of an assault with a deadly weapon. The offense of which defendant was found guilty is included in that with which he was charged. *People* v. *English,* 30 Cal. 215."

There is nothing to appellant's contention that he was not bound over for the offense for which he was tried and convicted. And the fact that a copy of the commitment was not on file in the superior

court at the time the information was returned was at most a technical error or defect and could not have affected any substantial right of appellant, and therefore, is no ground for reversal. Paragraph 1170, Penal Code 1913. While the crime of an assault with a deadly weapon is not a degree of the offense of assault with intent to commit murder, a commitment for the latter offense sufficiently describes the former as that an information based thereon for assault with a deadly weapon could not possibly mislead or prejudice the rights of the accused.

The information alleges that the instrument used was a deadly weapon. This, under the decisions, is a sufficient allegation of the lethal character of the weapon. *People* v. *Congleton,* 44 Cal. 92; *People* v. *Villarino,* 66 Cal. 228, 5 Pac. 154; *People* v. *Pape, supra; People* v. *Savercool,* 81 Cal. 650, 22 Pac. 856. See Chief Justice BAKER'S opinion in *Territory* v. *West,* 4 Ariz. 212, 36 Pac. 207.

Appellant complains of the court's rulings upon the admission of evidence:

(1) Witness Mangum, testifying in behalf of the prosecution, had told of Allred's being shot, of parties running away in the dark, and of hearing immediately thereafter "bullets striking through the trees—mesquites." He was then asked if he called anybody's attention to the shots, and, over objection, answered: "I made the remark to Mr. Allred that they were shooting back to scare us from following." Appellant moved that this answer be stricken as not a part of the *res gestae* and as a conclusion of the witness. The court's ruling is the basis of this assignment. However, it is not pressed very hard, the only comment of appellant's brief being: "Clearly such testimony was objectionable and if it had any effect on the case at all it would

tend to prejudice the jury against defendant.''
Three shots were fired by the parties running from
the sheriff and his deputies, one taking effect on
Allred. The other two did not take effect on any-
one, but were a part of the same transaction and
were doubtless fired for the same purpose as the
first, to wit, to prevent apprehension. The lan-
guage objected to was a most natural as well as
spontaneous comment, and it appearing to have
been used at the time of the shots or immediately
thereafter, and at the scene of the trouble, was a
part of the *res gestae.*

(2) It is said the appellant was compelled to
give evidence against himself. The basis for this
assertion is that the officers who arrested appellant
removed his shoes and thereafter used them for the
purposes of comparison with the tracks found lead-
ing from the scene of the shooting to the Evans
place, where appellant was afterwards found and
arrested. It is the contention that the officers in
taking the shoes from appellant's feet violated not
only the federal but the state Constitution which
provide that no person shall be compelled to give
evidence against himself. Article 2, § 10. So far
as the record shows the appellant did not object
to his shoes being taken or to their use in the man-
ner suggested. It may be doubted if the constitu-
tional privilege now invoked was ever intended to
exempt an accused from an exposition of physical
or natural marks or distinctions or characteristics,
such as tracks, footprints, stains, and finger-prints.
4 Wigmore on Evidence, § 2265. The learned au-
thor thinks the privilege against self-crimination
should be confined to testimonial utterances. As was
said in *State* v. *Graham,* 116 La. 779, 41 South. 90:

''The tendency of the more modern cases is to re-
strict the constitutional privilege against compul-

sory self-crimination to confessions, and admissions proceeding from the accused, and to open the door to the reception of all kinds of 'real evidence' or proof of physical facts, which speak for themselves.''

We think the cases are practically in accord in holding that the accused's shoes may be taken from his feet and used to compare with tracks, and afterwards introduced in evidence, when they are removed without objection and in the absence of compulsion. And some of the .courts go so far as to admit such evidence when the act of the defendant is entirely involuntary, as where he is compelled by the officers to put his foot in the track for the purposes of comparison. *Lee* v. *State*, 69 Fla. 255, Ann. Cas. 1917D, 236, and note, 67 South. 883; *State* v. *Thompson*, 161 N. C. 238, 76 S. E. 249; *State* v. *Sirmay*, 40 Utah, 525, 122 Pac. 748; *State* v. *McIntosh*, 94 S. C. 439, 78 S. E. 327; *State* v. *Fuller*, 34 Mont. 13, 8 L. R. A. (N. S.) 762, 85 Pac. 369; *State* v. *Ancheta*, 20 N. M. 19, 145 Pac. 1086; 8 R. C. L. 183, § 175; 16 C. J. 566, § 1101.

The witnesses were permitted to state, in effect, that they had compared the shoes of appellant with the tracks near the mesquite where Allred was shot and those leading to the Evans house, and that, in their opinion, the tracks were made by the owner of the shoes, and that there could be no doubt about it. One witness went so far as to say that it was not possible for the tracks to have been made by any other shoes. In this manner of stating the evidence we think the witnesses were permitted to go too far. The witnesses should have been permitted to state the facts observed by them, as, the size of the tracks as compared with the shoes, the peculiarities of the shoes indicated in the tracks, the measurements, etc., and left any deductions or conclusions to be drawn by the jury. This seems to be the rule observed by the courts in most of the

cases. *Collins* v. *Commonwealth,* 15 Ky. Law Rep. 691, 25 S. W. 743; *Heidelbaugh* v. *State,* 79 Neb. 499, 113 N. W. 145; *State* v. *Green,* 40 S. C. 328, 42 Am. St. Rep. 872, 18 S. E. 933; *Du Bose* v. *State,* 148 Ala. 560, 42 South. 862; *Hester* v. *State* (Tex. Cr. App.), 51 S. W. 932; *Russell* v. *State,* 62 Neb. 512, 87 N. W. 344; 16 C. J. 754, § 1550.

However, this evidence was all admitted without any objection, and, even though it should have been excluded, under the circumstances, we are not permitted to correct the error.

It is said:

"The court did not inform the jury in the instructions that the defendant's plea of not guilty presented the issues triable and tried; and therefore the court failed to submit to the jury all the controverted questions of fact for their decision."

It is probable the jury knew, after listening to the trial, as well as counsel and the court the issue for them to decide was whether appellant was guilty or not guilty. The whole effort on the part of the prosecution having been to establish the guilt, and the whole effort on the part of the appellant to prevent such a personal calamity, it would be ascribing to the jury very little intelligence to suggest that they did not know what they were there for.

The appellant complains because the court instructed the jury that the information contained the charge of an assault with a deadly weapon and that he might be found guilty thereof if the evidence warranted it. This presents the objection to the information raised by demurrer which we have held was properly overruled. It was not necessary to allege in the information the manner in which the deadly weapon was used, it being sufficient to set forth the fact that it was deadly. See *People* v. *Congleton, People* v. *Villarino, People* v. *Pape, Peo-*

*plc* v. *Savercool,* and *Territory* v. *West, supra.*
Where the weapon used is a firearm its deadly char-
acter will always depend upon the manner of its
use. If it is actually fired at someone within shoot-
ing distance, or used as a bludgeon, its deadly
character will be obvious, but if it is simply pointed
at the victim in a threatening manner it may or may
not be deadly, depending upon whether it was
loaded, the burden being upon the accused, if he con-
tend he committed no assault, to show the weapon
at the time was unloaded. *Gomez* v. *Territory,* 14
Ariz. 139, 42 L. R. A. (N. S.) 975, 125 Pac. 702. In
the present case the weapon was actually discharged,
seriously wounding Allred, so that there can be no
question as to its deadly character, nor the propriety
of giving the instruction.

Complaint is also made of the court's reading, as
part of its instructions a portion of section 219 of
the Penal Code, as follows:

"Every person who commits an assault upon the
person of another with a deadly weapon or instru-
ment, or by any means or force likely to produce
great bodily injury," is guilty of the crime known
as assault with a deadly weapon.

It is said the phrase "or by any means or force
likely to produce great bodily injury" was calculated
to mislead the jury and prejudice the defendant's
rights. The information charged the instrument used
by appellant to be a certain firearm loaded with
powder and ball, and the instruction, to be tech-
nically correct, should have omitted all reference to
any other means or force; but it would be far from
the truth to assume the instruction as given preju-
diced any right of appellant. The criticised language
might better have been omitted for the sake of ac-
curacy, but otherwise it was harmless.

The instruction as to what constitutes an assault
with a deadly weapon, or one phase of it, is said to

be erroneous. The court properly defined an assault in the language of the statute. Section 207, Penal Code. He also gave a definition of an assault with intent to murder. He then said:

"Every person who commits an assault upon the person of another with a deadly weapon or instrument . . . is guilty of the crime known as assault with a deadly weapon."

In another part of the instructions the court, in differentiating the two offenses laid in the information, said that the crime of an assault with a deadly weapon "requires the intent and the ability to commit a great bodily injury with a deadly weapon upon the person." It is this last-quoted phrase of which complaint is made. It is said it omits to include as an element of the offense "a present ability to commit a violent injury, or great bodily injury, on the person of another with a deadly weapon." The instructions, of course, must be taken as a whole and not piecemeal, and when those given by the court are treated that way, it will be found that they fairly state the law.

Appellant singles out of the instructions of the court this language:

"You are instructed that in this case you must find from the evidence, beyond a reasonable doubt, that the defendant Edd Lee fired the gun that wounded Mr. Allred before you can convict,"

—and complains of it because, he says, it permits the jury to convict the defendant if they believe beyond a reasonable doubt Edd Lee fired the gun without any cause or design, the mere fact of his having fired the gun being sufficient to justify a conviction. In the statement of facts we said the appellant denied shooting Allred and claimed that Allred was wounded by an accidental shot discharged by Mangum. This instruction was given to meet

that contention. Other appropriate and correct instructions as to intent, design, or purpose were given by the court.

Complaint is also made of another instruction which told the jury, in effect, that if they had a reasonable doubt as to whether Edd Lee, or some other person, fired the gun that wounded Allred it would be their duty to return a verdict of not guilty. This instruction is surely as favorable to the appellant as he could ask under the facts and circumstances disclosed in this case. This was, in effect, a repetition of the previous instruction, and doubtless was given to accord with appellant's theory that it was not he, but Mangum, who shot Allred.

An examination of the instructions requested and given, however, shows that the last two instructions were requested by the appellant himself. Having himself secured their submission it is with poor grace that he asks this court to hold them bad law and set aside the verdict.

Finally, appellant objects to the proceedings had upon his arraignment for judgment. Paragraph 1123 of the Penal Code of 1913 makes it the duty of the court, or the clerk of the court, to inform a defendant when he appears for judgment of the nature of the indictment or information, his plea, and the verdict, and to ask him if he have any legal cause to show why judgment should not be pronounced against him. The minutes of the clerk of the court for December 17, 1921, the day appellant was sentenced, show that appellant, his attorney, and the county attorney, were present in court; that the court informed the appellant of the nature of the information filed against him, stating that it was for the crime of assault with intent to commit murder, committed on the twenty-ninth day of September, 1921;

of the appellant's arraignment and of his plea of
not guilty as charged in the information of October
3, 1921; of his trial by a jury, and asked the appel-
lant if he had any legal cause to show why judg-
ment should not be pronounced against him, the
appellant answering in the negative. The court's
statement to the appellant was incorrect in that the
trial was not had upon the information filed October
3, 1921, but upon the information filed October 21st.
The court did, however, clearly state the nature of
the charge in the information, and also all of the
other facts required by the statute. We think the
date of the filing of the information was not as
material as that the defendant should know the na-
ture of the charge in the information. The purpose
of requiring the court to state to a defendant on
his arraignment the things set forth in paragraph
1123 of the Penal Code is that he may show, if it
be a fact, that he is then insane or that he has good
cause to offer in arrest of judgment or for a new
trial. Section 1124, Id. It is said by the Cali-
fornia courts that this requirement of the statute
is mandatory. *People* v. *Walker,* 132 Cal. 137, 64
Pac. 133. The purpose of the statute evidently is
to accord the defendant a final opportunity to defer
or defeat the final sentence of the law. We think,
however, a substantial compliance with the terms of
the statute is sufficient. No slight error should avoid
the arraignment and sentence. The date of the filing
of the information with the clerk of the court,
whether on the 3d or on the 21st of October, we
think is entirely immaterial.

We have carefully scrutinized all the assignments
made by appellant and have also examined his au-
thorities. Our conclusion is that appellant was given
a fair trial in accordance with the law, and that the

judgment of the lower court should be affirmed. It is so ordered.

McALISTER, C. J., and LYMAN, J., concur.