259 P.2d 261

**STATE v. BERG.**

No. 1038.

Supreme Court of Arizona.

July 18, 1953.

Wm. P. Mahoney, Jr., County Atty., and Charles L. Hardy, Deputy Co. Atty., Phoenix, for the State.

Paul H. Primock and Newman W. White, Phoenix, for defendant.

PHELPS, Justice.

The trial court, under the provisions of section 44–2401, A.C.A.1939, has certified to us four questions of law arising in the above entitled criminal case with a request that we render an advisory opinion thereon. The precise questions are hereinafter set forth haec verba. In substance they all raise the question as to whether the results of a drunkometer test are admissible in evidence where the evidence discloses the specimen of breath was forcibly taken from the

defendant over his objection. It is asked if such acts violate the defendant's Federal and state constitutional rights.

Counsel have stipulated to the purported facts which are in substance that defendant was arrested in February 1953 by police officers while he was driving an automobile within the city of Phoenix and that a drunkometer test of a specimen of his breath made soon thereafter disclosed a blood alcohol concentration of .249% by weight. The facts as stipulated do not disclose upon what grounds the arrest was made but the only inference to be drawn therefrom is that the police officers making the arrest had reason to believe that defendant was then and there operating an automobile while under the influence of intoxicating liquor. In any event a direct information was promptly filed in the superior court of Maricopa County charging defendant in two counts with operating an automobile while under the influence of intoxicating liquor and with reckless driving alleging a former conviction in each count.

It is stipulated that the drunkometer test is the only evidence of intoxication. It is further stipulated that defendant refused to submit to a drunkometer test which we presume means to state that he refused to permit a specimen of his breath to be taken and was compelled to submit thereto by force. The stipulation contains the statement that certain police officers who, if called as witnesses, would testify that in order to procure the breath specimen of

defendant it was necessary that he be forcibly placed in restraining straps and that his head be forcibly held during the taking of the breath specimen. No further details are included in the agreed stipulation of facts.

It will be seen from the above that the stipulated facts are most incomplete and unsatisfactory in that it cannot be determined therefrom if the breath was forced from the lungs by the officers in some brutal manner or if it was forced to be retained in the lungs and permitted to escape only through some device clamped over the mouth and nostrils of the defendant or in some other unlawful or inhuman manner by the use of force.

We will dispose of the questions in the order of their presentation.

■■■■ 1. Is the result of a drunkometer test admissible in evidence where the testimony or evidence discloses that said specimen of breath of defendant analyzed in such test was forcibly taken from said defendant and over the objections of said defendant?

The answer is yes, if the force is used in capturing the exhaled breath after it passes the lips or nose of defendant.

This question involves a rule of evidence. We are committed to the following rule under our decision in the case of State v. Frye, 58 Ariz. 409, 120 P.2d 793, 797. The court said:

"No innocent party need fear the effect of the use of evidence against him illegally obtained, while the invasion of his right to be free from illegal trespass will be avenged by a judgment in damages, and, if the court having jurisdiction of officers committing the offense does its duty in cases where the violation was willful and intentional, by punishment for contempt. On the other hand, even the guilty criminal against whom the evidence is used has the same remedies for an illegal trespass, but should not be given, in addition immunity for some other breach of the law. The constitutional provision was not meant to assist a guilty criminal in escaping the penalty for his misdeeds, but to protect certain rights belonging to all men alike, and the remedies applied should recognize this principle. We hold, therefore, that in determining the admissibility of evidence the fact that it has been obtained as the result of a violation of the Fourth Amendment does not affect the issue."

To the same effect is State v. Pelosi, 68 Ariz. 51, 199 P.2d 125. In People v. De-Fore, 242 N.Y. 13, 150 N.E. 585, Judge Cardozo, author of the opinion stated that thirty-one of the states of the Union adhere to this rule. The reason assigned for the rule is that courts will not hear evidence on collateral issues in the trial of criminal cases. Further citations are unnecessary.

2. Does the forcible taking of a breath specimen from a defendant for the purpose of a drunkometer test, violate article 2, section 10 of the constitution of Arizona?

The answer is no.

Section 10, supra, provides that:

"No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense."

The above provision of our constitution is in substance the same as one of the immunities guaranteed under the provisions of the Fifth Amendment to the Constitution of the United States. Every state in the Union has similar provisions with the exception of Iowa and New Jersey. Although slightly different in the language employed the courts uniformly hold that their meaning and purpose are the same. While there is a divergence of authority on the scope of evidence intended to be embraced in this constitutional immunity the better rule, we believe, is that it is limited primarily to testimonial compulsion, i. e., "to extract from the person's own lips an admission of his guilt."

8 Wigmore on Evidence, 3d ed., sections 2252, 2263, enunciate the history of the rule and the rule itself in section 2263 as follows:

"In the interpretation of the principle, nothing turns upon the variations of wording in the constitution-

al clauses; this much is conceded * * *. These various phrasings have a common conception, in respect to the *form* of the protected disclosure. What is that conception?

"Looking back at the history of the privilege (ante, section 2250) and the spirit of the struggle by which its establishment came about, the object of the protection seems plain. It is the employment of legal process to *extract from the person's own lips* an admission of his guilt, which will thus take the place of other evidence. Such was the process of the ecclesiastical Court, as opposed through two centuries,— the inquisitorial method of putting the accused upon his oath, in order to supply the lack of the required two witnesses. Such was the complaint of Lilburn and his fellow-objectors, that he ought to be convicted by other evidence and not by his own forced confession upon oath.

* * * * * *

"In other words, it is not merely any and every compulsion that is the kernel of the privilege, in history and in the constitutional definitions, but *testimonial compulsion*. The one idea is as essential as the other.

"The general principle, therefore, in regard to the form of the protected disclosure, may be said to be this: The privilege protects a person from any disclosure *sought by legal process against him as a witness.*"

Section 2264 thereof makes a broader application of the rule to include documents or chattels produced in court by legal process:

"*Production or Inspection of Documents and Chattels. 1.* It follows that the production of *documents or chattels* by a person (whether ordinary witness or party-witness) in response to a subpoena, or to a motion to order production, or to other form of *process treating him as a witness* (i. e., as a person appearing before the tribunal to furnish testimony on his moral responsibility for truth-telling), may be refused under the protection of the privilege; and this is universally conceded. For though the disclosure thus sought be not oral in form, and though the documents or chattels be already in existence and not desired to be first written and created by testimonial act or utterance of the person in response to the process, still no line can be drawn short of any process which treats him as a witness; because in virtue of it he would be at any time liable to make oath to the authenticity or origin of the articles produced.

"2. It follows, on the other hand, that documents or chattels obtained from the person's control *without the use of process against him as a witness*

are not in the scope of the privilege, and may be used evidentially; for obviously the proof of their authenticity, or other circumstances affecting them, may and must be made by the testimony of other persons, without any employment of the accused's oath or testimonial responsibility:

\*     \*     \*     \*     \*     \*

"(a) This distinction has received repeated illustration and almost universal acceptance, in a variety of applications to documents and chattels obtained by *search or seizure independent of testimonial process, e. g.* by physical search of the person or premises without calling upon the party for any act or utterance of his own."

Justice Bailey in the case of State v. Cram, 176 Or. 577, 160 P.2d 283, 164 A.L. R. 952, says that this extension of the rule to documents and chattels is conceded by practically all the authorities to be correct.

In Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 6, 54 L.Ed. 1021, in which the defendant was charged with murder and the question arose as to whether a blouse belonged to the prisoner, a witness was permitted to testify that the prisoner put it on and it fit him. Justice Holmes in writing the opinion referred to the objection to this evidence as an extravagant extension of the Fifth Amendment. It was charged there that the defendant put the blouse on under duress. Justice Holmes said, in upholding the court in admitting the evidence:

"\*  \*  \* But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof. \*  \*  \*"

This is quoted with approval in the case of Commonwealth v. Musto, 348 Pa. 300, 35 A.2d 307. See also State v. Gatton, 60 Ohio App. 192, 20 N.E.2d 265; Ridgell v. United States, D.C.Mun.App., 54 A.2d 679; State v. Smith, Del.Super., 91 A.2d 188; Block v. People, 125 Colo. 36, 240 P.2d 512; Lee v. State, 27 Ariz. 52, 229 P. 939, 942. It was claimed in the Lee case, supra, that the defendant was compelled to give evidence against himself. The officers removed his shoes from his feet for the purpose of comparing them with tracks leading from the scene of the shooting to the place where the defendant was found. It was contended that this violated article 2, section 10, of our constitution. The court said:

"\*  \*  \* So far as the record shows the appellant did not object to his shoes being taken or to their use in the manner suggested. It may be doubted if the constitutional privilege now invoked was ever intended to exempt an accused from an exposition of physical or natural marks or distinc-

tions or characteristics, such as tracks, footprints, stains, and fingerprints. 4 Wigmore on Evidence, § 2265. The learned author thinks the privilege against self-crimination should be confined to testimonial utterances. As was said in State v. Graham, 116 La. 779, 41 So. 90:

" 'The tendency of the more modern case is to restrict the constitutional privilege against compulsory self-crimination to confessions, and admissions proceeding from the accused, and to open the door to the reception of all kinds of "real evidence," or proof of physical facts, which speak for themselves.' "

To the same effect is State v. Cram, supra.

3. Does the forcible taking of a breath specimen from a defendant for the purpose of a drunkometer test, violate article 2, section 8 of the constitution of the state of Arizona?

The answer is no.

This section provides that:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

We are somewhat at a loss to understand in what particular defendant claims that his right under the provisions of the above section of the state constitution (commonly known as the "search and seizure" provision) have been violated. There is no claim that defendant's home was unlawfully invaded. Hence if this provision of the constitution has been violated it must be by reason of some disturbance of the defendant in his private affairs without authority of law. He was not forced to exhale breath from his lungs. He exhaled it voluntarily and in fact of necessity in order to survive. The moment his breath passed his lips it was no longer his to control but became a part of the surrounding atmosphere which was equally free for use by anyone present within the orbit of its immediate circulation. Officers making the arrest had the lawful right to capture his breath after it left his body for use as evidence in procuring his conviction of drunk driving if in the process of doing so they made no invasion of his person. So long as they limited their operation to the capture of his breath after it left his body by means, which only slightly interfered temporarily with his freedom of action he had no legal right to obstruct their efforts. If he did obstruct them they had the right to use such force upon defendant as appeared to be reasonably necessary to overcome such interference. Such a process, if not resisted by defendant, involves less restraint upon his person than finger-printing him. Judge Hand said in the case of United States v. Kelly, 55 F.2d 67, 68, 83 A.L.R. 122, with respect to the right to fingerprint a person arrested, whether convicted at the time or not:

"Any restraint of the person may be burdensome. But some burdens must be

borne for the good of the community. (Citing cases.) The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest.

"Arrest upon probable cause and search of the person in connection with the arrest and seizure of evidences of crime have long been allowed. (Citing cases.) * * *"

With a rapidly increasing death toll upon the public highways of the nation, much of which may be attributed to drunk driving, we believe the slight inconvenience to a defendant arrested for drunk driving in requiring him to exhale his breath in the direction of a rubber suction tube which in nowise contacts his body or contributes to his discomfort, is a burden which such defendant must bear for the common interest.

In United States v. Mills, C.C., 185 F. 318, 319, the court said:

"From time immemorial an officer making a lawful arrest on a criminal charge has taken into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence on the trial. A blood-stained knife or garment, a half-emptied phial of poison, a mask or disguise, counterfeit coins, plates for printing counterfeit notes, gambling devices, stolen property, and many other articles are thus seized every day on the person or the premises of the alleged criminal, and no one disputes the propriety of such seizure."

We can see no legal difference in the right to a specimen of defendant's breath to be used as evidence in cases of drunk driving where the body of the person is neither invaded nor assaulted and the right to search his person and premises and seizing such physical evidence as deemed necessary to procure a conviction of the crime for which he was arrested. We have read the case of Rochin v. People of the State of California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, cited by defendant and find no similarity whatever in that case to the case at bar. There an emetic solution was forced through a tube into the stomach of defendant producing vomiting and in the vomited matter two capsules of morphine were found and used at the trial. The conviction in that case was reversed on the ground that it violated the due process clause of the 14th Amendment to the Constitution of the United States. Neither is there any similarity in the instant case with cases cited relating to the taking of blood tests of a defendant which is accomplished by withdrawing blood from the veins of the body through the medium of a needle constructed for that purpose. And there is but slight similarity in the instant case to cases cited by defendant where urinalysis was made and used as evidence against the defendant. Many courts have held that both blood and urine obtained by force or otherwise is admissible against the defendant and does not

violate the constitutional provision guaranteeing immunity from self-incrimination. We express no opinion on these questions as they are in nowise involved in this case and the cases cited are not in point.

4. Does the forcible taking of a breath specimen from a defendant, for the purpose of a drunkometer test, violate the Fourth and Fifth Amendments of the constitution of the United States?

The answer is no.

The Fourth and Fifth Amendments to the constitution of the United States have no application whatever to the trial of cases in the state courts. They apply only to trials in Federal courts. Counsel for defendant have quoted the 14th Amendment to the constitution of the United States in their original brief. Just why is not clear. No reference is made to it in the arguments in their brief and no question is certified to us based upon its provision. The 14th Amendment is a restriction upon the employment of methods in state courts which violate the due process clause of that amendment but the Supreme Court of the United States in Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97, and Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 152, 82 L.Ed. 288, holds that immunity from compulsory self-incrimination is not of the essence of a scheme of ordered liberty like freedom of speech, freedom of the press and freedom of religion and therefore does not fall within the prohibition of the due process clause of the 14th Amendment; that immunity from being a witness against one's self falls rather in the category with other guarantees of the Fifth Amendment such as a right to trial by jury and immunity from prosecution except as the result of an indictment by grand jury, both of which have been abolished in several states. Prosecutions in this state are practically all by information. Justice Cardozo said in the Palko case, supra, to abolish trial by jury and the requirement that no prosecution shall be had except upon indictment by grand jury

"* * * is not to violate a 'principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' (Citing cases.) * * * What is true of jury trials and indictments is true also, as the cases show, of the immunity from compulsory self-incrimination." See Twining v. New Jersey, supra.

Therefore:

In summary, the answer to question No. 1 is, yes, if the force is used in capturing his breath after it passes the lips or nostrils of defendant; and to questions Nos. 2, 3 and 4 the answer is no.

STANFORD, C. J., and LA PRADE, UDALL and WINDES, JJ., concur.