480 P.2d 35

**Mariano GO, Joseph Bacon and Robin Saucido, Petitioners,**

v.

**The Honorable Howard V. PETERSON, Judge of the Superior Court, Maricopa County, Arizona, Respondent;**

**The CITY OF PHOENIX, a municipal corporation, Real Party in Interest.**

**No. I CA–CIV 1559.**

Court of Appeals of Arizona.
Division 1,
Department B.

Feb. 1, 1971.

Richard J. Hertzberg, and Richard J. Rubin, Phoenix, for petitioners.

Joe R. Purcell, City Atty., by John A. LaSota, Jr., Asst. City Atty., Phoenix, for real party in interest.

HAIRE, Judge.

This petition for relief by special action calls into question the constitutional and jurisdictional propriety of a combined injunctive and "show cause" procedure instituted by municipal authorities preliminary to a potential obscenity prosecution. The procedure employed was designed to retain an allegedly obscene movie within the jurisdiction and at the same time afford the film's exhibitors the constitutionally required "prior adversary hearing" on the issue of obscenity before seizure of the film.

Petitioners are employees of the Paris Theatre, a Phoenix motion picture theatre.

The City of Phoenix, the respondent real party in interest here, filed an initial pleading styled a "Complaint and Petition for Adversary Hearing to Consider Question of Obscenity". This pleading named petitioners and others as respondents. Based upon the affidavit of a police officer, it alleges that petitioners' commercial exhibition of a film entitled "Captain Peter" was in violation of A.R.S. § 13–532, subparagraph 2, which declares it a misdemeanor to exhibit, knowingly and commercially, an obscene "item", which by statutory definition includes a film. The specific prayer of the "Complaint and Petition for Adversary Hearing * * *" is that "* * * an order to show cause issue out of this Court requiring the Respondents [including petitioners here] to appear before the Court on a date certain to show cause why the motion picture entitled 'Captain Peter' should not be adjudged obscene." Such a determination was sought by the City so that the film could thereafter be seized without First Amendment objection. The respondent trial judge has set a hearing date and issued a show cause order in accordance with the prayer.

Contemporaneously with filing the foregoing complaint, the City filed an application for an *ex parte* temporary restraining order, seeking to prevent and enjoin the adverse parties (including petitioners here) from removing the film from the jurisdiction, or from destroying, altering, or editing the film. The respondent trial judge issued a temporary restraining order incorporating the requested terms. The order did not prohibit the further exhibition of the film.

■ Petitioners' principal contention in this Court is that the *ex parte* injunctive order entered by the trial judge without his having viewed the film or held an adversary hearing as to its obscene or nonobscene character amounts to a constitutionally invalid "prior restraint" on dissemination of possibly protected free expression, and that such "prior restraint" infects and invalidates all future prosecutorial

proceedings. *See* A Quantity Of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L. Ed.2d 809 (1964) ; City of Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966).

Assuming it to be entirely settled that *seizure* by prosecution authorities of a single copy of an allegedly obscene movie prior to an adversary hearing on obscenity is an invalid restraint on dissemination, *see* Demich, Inc. v. Ferdon, 426 F.2d 643 (9th Cir. 1970) (U.S.App. Pndg.), the contention that the *ex parte* order here involved is also an invalid restraint must be rejected. The constitutionality of a temporary restraining order is indicated in Bethview Amusement Corp. v. Cahn, 416 F.2d 410 (2nd Cir. 1969), a "prior restraint" decision, at page 412, as follows:

> "Finally it is suggested that unless the police or other local authorities have actual possession of the film pending the required adversary proceeding, the distributor may take advantage of the delay, for example, by shipping the film out of the jurisdiction or by cutting out the offending scenes. *If there is a real threat of such activity it can be controlled by an ex parte restraining order."* (Emphasis added).

In holding that the temporary restraining order was not an invalid prior restraint on dissemination, we stress the fact that it did not purport to enjoin further exhibition within the jurisdiction. Petitioners urge this Court to take judicial notice of the fact (if it be a fact) that few copies of films such as "Captain Peter" are produced, and argue that the restraining order limits dissimination in other jurisdictions. We note, in this connection, that the City of Phoenix states that it has offered to make a print of the film in issue so that the original may be freed. *Cf.* Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969) illustrating the more common situation where a federal court orders an exhibitor to provide state prosecuting authorities with a copy of the allegedly obscene film. The "prior restraint" rule fashioned by the United States Supreme Court to assure the

free dissemination of constitutionally protected speech and expression was not intended to frustrate vindication of a state's anti-obscenity statutes by reasonable prosecutorial means.

Petitioners also argue that Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed. 2d 325 (1968) ·indicates that a temporary restraining order such as the one entered here is an unconstitutional prior restraint. Carroll involved free speech in its most important, elemental context: the dynamic democratic political process. At least insofar as respects the *kind* of temporary restraining order at issue here, commercial *memorialized* artistic and sexual expression, however protectible, is a different breed. In any event, the type of order here involved was not an unconstitutional "prior restraint".

 Less readily answerable questions are raised by petitioners' somewhat scantily asserted position that the contemplated adversary hearing is not an authorized proceeding under our state law, and that, in effect, there was no basis for issuance of the injunctive order.

It is worth noting, first, as a matter of background, that the City of Phoenix concedes that A.R.S. § 13–535, which gives the Superior Court jurisdiction to enjoin the sale or distribution of obscene prints and articles, is inapplicable in the case of a commercial exhibition of a motion picture. The concession seems well made, since § 13–535 seems clearly aimed at stopping the flow or *physical* distribution of *tangible* obscene items. The City, in employing the procedure in question here, is thus attempting to provide the requisite adversary hearing without having at its disposal an injunctive tool expressly authorized by statute with which to hold the movie within the jurisdiction for potential prosecution purposes.

It is further worth noting that there is at least some substantial question as to whether prosecuting authorities could have temporary injunctive relief by seeking an order ancillary to a suit to enjoin the maintenance of a public nuisance. There is no question but that a public nuisance may be enjoined in Arizona, even though its maintenance is a crime. State ex rel. La Prode v. Smith, 43 Ariz. 131, 29 P.2d 718 (1934), modified immaterially at 43 Ariz. 343, 31 P.2d 102 (1934). A question which arises, however, is whether an obscene film or its mere exhibition within an enclosed theatre would constitute a "public nuisance" within the terms of A.R.S. § 13–601. *See*, in this connection, Engle v. Scott, 57 Ariz. 383, 114 P.2d 236 (1941), and Cloyd v. State, 202 Tenn. 694, 308 S. W.2d 467 (1957). Another possible question would be the propriety in a nuisance case of an injunctive order against destruction or removal of the thing alleged to give rise to the nuisance.

There are several lines of argument that might be raised in opposition to the procedure at issue here. Petitioners mention lack of specific statutory authority for holding the constitutionally required adversary hearing, but we think this argument is adequately answered in cases such as Gable v. Jenkins, 309 F.Supp. 998, 1001, at note 3 (N.D.Ga. 1969) (three-judge court), affirmed, 397 U.S. 592, 90 S.Ct. 1351, 25 L. Ed.2d 595 (1970), which indicate that an adversary hearing by any available means is acceptable. Other important lines of argument are suggested by the following principles: (1) that a temporary restraining order is an ancillary and provisional remedy normally granted within or incident to a main or principal legal or equitable action;[1] (2) that the "auxiliary" jurisdiction of equity is never exercised to grant a bill of discovery in a criminal proceeding;[2] and (3) that a court must have jurisdiction over a "case" or "pro-

---

1. 42 Am.Jur.2d Injunctions §§ 10, 11 (1969); In re Sharp, 87 Kan. 504, 124 P. 532 (1912).

2. 1 J. Pomeroy A Treatise on Equity Jurisprudence § 197 (5th ed. 1941).

ceeding" before it can exercise its inherent powers in the furtherance of its jurisdiction.[3]

As important and as often controlling as these principles are, we do not think that they should be applied so as to invalidate the procedure employed in this particular case. In our view, the adversary hearing procedure employed is sustainable as being practically and in essence an application for a search warrant, which the potential adversaries are entitled to contest. *See* Gable v. Jenkins, *supra.* At this point it is important to realize that in the usual course and but for the "prior restraint" and "adversary hearing" rule only recently articulated by the United States Supreme Court, the film would be subject to seizure pursuant to a warrant issued *ex parte* to the City on a showing of probable cause. In providing that the application be a contested one so as to accommodate the recent constitutional requirement, the trial judge sitting as a magistrate draws upon implicit powers flowing from his duty to administer the supreme law of the land. Implicit in a trial judge's exercise of this power, in our view, is the authority to issue the limited kind of injunctive order issued here.

In reaching this conclusion, we do not sanction the exercise of any broad-sweeping and nebulous inherent or common-law powers. Our holding relates only to the peculiar legal context of the case before us. We find support for our holding in the decisions of the Federal Courts of Appeals which have upheld or provided for orders requiring movie exhibitors to turn over to prosecutors copies of allegedly obscene films. *See* Tyrone, Inc. v. Wilkinson, 410 F.2d 639 (4th Cir. 1969), and Metzger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). These decisions indicate that reasonable, practical judicial solutions are to be applied to alleviate the prosecutorial problems inherent in affording an exhibitor a pre-seizure adversary hearing. Though inapposite factually, the following language of Chief Justice Ross in Funk

Jewelry Co. v. State ex rel. La Prode, 46 Ariz. 348, 352, 50 P.2d 945, 946 (1935), indicates that this Court should eschew the fine threadwork of technicality in a case like the present one:

"The law should be obeyed. A violation of it is a wrong to the state * * * One of the maxims of the law is that there is no wrong without a remedy. It is shocking to the commonist understanding to concede the purpose of the law cannot be realized for the lack of a remedy. It presents the picture of the sovereign state making a law but being unable to enforce it. Such a happening the courts try very hard to avoid."

For the foregoing reasons, the petition for relief by special action is denied.

JACOBSON, P. J. and EUBANK, J., concur.

---

3. State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192 (1931).