490 P.2d 856

**William ANDERSON, Petitioner,**

**v.**

**The Honorable Rufus C. COULTER, Jr., Judge of the Superior Court, Maricopa County, Arizona, Respondent;**

**The CITY OF PHOENIX, a municipal corporation, Real Party in Interest.**

**No. 1 CA–CIV 1746.**

Court of Appeals of Arizona,
Division 1,
Department A.

Nov. 16, 1971.

Rehearing Denied Dec. 10, 1971.

Review Granted Jan. 11, 1972.

Richard J. Hertzberg, Phoenix, for petitioner.

Joe R. Purcell, City Atty. City of Phoenix, by Alan S. Max, Richard M. Hannon and John A. LaSota, Jr., Asst. City Attys., for respondent and real party in interest.

STEVENS, Presiding Judge.

The questions involved in this special action are: First, whether the City of Phoenix may legally file a civil action in relation to allegedly pornographic matter and require the production thereof by a subpoena duces tecum in the face of a claimed Fifth Amendment right; and second, if it may do so, the effect of the immunity grant contained in A.R.S. § 13–1804. The questions here presented were not decided in the case of Go v. Peterson, 14 Ariz.App. 12, 480 P.2d 35 (1971).

The facts necessary to place this matter in perspective are as follows: On or about 8 June 1971, the City of Phoenix filed a civil complaint[1] against the petitioner and

1. Complaint and Petition For Adversary Hearing To Consider Question of Obscenity and Application for Preliminary and Permanent Injunction and Order to Show Cause.

others to have a motion picture being exhibited commercially by petitioner declared obscene. The purpose of such a determination was to assist the respondent city in the prosecution of petitioner for an alleged violation of the Arizona Obscenity Statute, A.R.S. § 13–532. In conjunction with the filing of the above complaint, a subpoena duces tecum was directed to petitioner which ordered the production of the subject film for viewing by the respondent court.

Petitioner refused to produce the film and moved to quash the subpoena on the basis of the Fifth Amendment privilege against self-incrimination. This motion was denied and on 29 June 1971 an order was issued which provided in pertinent part that:

"The Court finds that the provisions of the Fifth Amendment and the privilege against self-incrimination do not apply. IT IS FURTHER ORDERED denying Defendant Anderson's motion to quash subponea duces tecum.

"IT IS FURTHER ORDERED granting Plaintiff's motion to produce, and the Court requires that Defendant produce the film in question."

This Court entertained the special action which was filed subsequent to the issuance of the above order to determine whether such a procedure is statutorily or constitutionally permissible. At the conclusion of the informal presentation of the petition for special action this Court entered an order wherein it assumed jurisdiction and requested additional briefs. The order then entered provided in part, as follows:

"IT IS FURTHER ORDERED, pending further order of this Court, that the Respondent Judge, be and is hereby enjoined and restrained from enforcing compliance with the subpoena *duces tecum* and from any action requiring the petitioner before the Court of Appeals to produce the film in question. * * *

"IT IS FURTHER ORDERED that this order, except as above set forth, is not a restraint upon further proceedings in relation to the adversary hearing in the above-numbered Superior Court matter."

This opinion resolves the issues framed by the special action.

█ Petitioner argues that A.R.S. § 13–1804,[2] which provides that:

"If a witness in any judicial proceeding claims the privilege against self-incrimination but is required by the court to give testimony or produce evidence, the witness shall not be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he testifies or produces evidence. The witness may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order.";

prohibits the use of the film in question in a criminal prosecution against him if he produces such film pursuant to the order of the respondent court. It is the opinion of this Court that such a proposition is basically sound.

Arizona has, by constitution and statute, adopted a variety of laws intended to grant immunity and compel testimony in different situations. Udall, Arizona Law of Evidence § 99 (1960). With respect to at least two of these statutes in particular, our Supreme Court has adopted the view that such provisions are "self-executing," i. e., the immunity attaches and results whenever the witness gives the testimony, whether or not he was ordered to testify after first refusing and claiming the privilege. State v. Chitwood, 73 Ariz. 314, 240 P.2d 1202 (1952). In this regard, it has been noted that whether a particular provision is "self-executing" or requires a spe-

2. The statute under which this opinion is decided became effective on 11 July 1969. Subsequent to that date, the statute has been amended to include grand jury proceedings within the protection afforded effective 13 August 1971.

cific claim of privilege and compulsion to bring it into action, will depend on the wording of the immunity law. Udall, Arizona Law of Evidence, supra at § 99, n. 54.

The immunity statute which is presently before this Court sets forth two requirements before its protection may be claimed by a witness. The witness must claim the privilege against self-incrimination and the court before which the witness is appearing must subsequently order the witness to give testimony or produce evidence. Petitioner was ordered to produce evidence which he claimed would violate his Fifth Amendment privilege against self-incrimination.

These facts when viewed in conjunction with A.R.S. § 13-1804 lead this Court to hold that the protection provided by the subject statute must by operation of law be granted to the petitioner should he produce the film in question pursuant to an order of the respondent court issued after the assertion of a Fifth Amendment privilege.

■■ Should the petitioner fail to produce the evidence in question subsequent to an order by the respondent court to do so, it is the further holding of this Court that such inaction will render the petitioner subject to the enforcement provisions of A.R.S. § 13-1804 which provide for the prosecution of or the imposition of a penalty or forfeiture upon any witness who refuses to produce evidence pursuant to an order to do so subsequent to a claim of privilege. Where a witness claims the self-incrimination privilege but no possibility of conviction or criminal liability exists, the design for which the privilege is created is not present and it is uniformly held that there is no privilege. Udall, Arizona Law of Evidence, at § 99. Similarly, a legislative provision providing amnesty for an individual offender who shall disclose the facts of an offense upon inquiry is effective to remove the criminality of the offense, and the privilege thereby ceases as to the person so disclosing. 8 Wig-

more on Evidence § 2281 (McNaughten rev. 1961).

■ Our determination that the petitioner must comply with an order to produce an allegedly obscene film when he has been statutorily exempted from prosecution, penalty or forfeiture on the basis thereof is at least partially founded upon the conclusion that production of evidence pursuant to a subpoena duces tecum is in fact that type of testimonial compulsion which is prohibited by the Fifth Amendment of the Federal Constitution and a similar provision of the Arizona State Constitution.

This Court has no doubt that the use of such process would have the same effect as any of the other forms of testimonial compulsion which are constitutionally prohibited.

In the case of State v. Berg, 76 Ariz. 96, 259 P.2d 261 (1953), which has been cited by both counsel, our Supreme Court in commenting upon Article 2, section 10 of the Arizona State Constitution, A.R.S. which provides that:

> "No person shall be compelled in any criminal case to give evidence against himself, or be twice put in jeopardy for the same offense." ;

discussed at length the scope of the evidence intended to be embraced in this constitutional immunity and held that such protection was limited primarily to testimonial compulsion, i. e., to extract from the person's own lips an admission of his guilt.

Quoting from 8 Wigmore on Evidence, § 2263 (3d ed. 1940) the Court continued and noted that:

> " 'The general principle, therefore, in regard to the form of the protected disclosure, may be said to be this: The privilege protects a person from any disclosure *sought by legal process against him as a witness.*' " (Emphasis Theirs) State v. Berg, 76 Ariz. at 100, 259 P.2d at 264.

The Court then pointed out that § 2264 of Wigmore makes a broad application of the

rule to include documents or chattels produced in court by legal process.

"'Production or Inspection of Documents and Chattels. 1. It follows that the production of *documents or chattels* by a person (whether ordinary witness or party-witness) in response to a subpoena, or a motion to order production, or to other form of *process treating him as a witness* (i. e., as a person appearing before the tribunal to furnish testimony on his moral responsibility for truth-telling), may be refused under the protection of the privilege; and this is universally conceded. For though the disclosure thus sought be not oral in form, and though the documents or chattels be already in existence and not desired to be first written and created by testimonial act or utterance of the person in response to the process, still no line can be drawn short of any process which treats him as a witness; because in virtue of it he would be at any time liable to make oath to the authenticity or origin of the articles produced.'" State v. Berg, 76 Ariz. at 100, 259 P.2d at 264.

■ The most recent revision of Wigmore specifically states that a testimonial compulsion is implicit in the production of a document or chattel pursuant to court order, while the third edition merely noted that no line could be drawn between production of evidence and an oral disclosure.

"*It is the witness' assurance, compelled as an incident of the process, that the articles produced are the ones demanded.* No meaningful distinction can be drawn between a communication necessarily implied by legally compelled conduct and one authenticating the articles expressly made under compulsion in court. Testimonial acts of this sort—authenticating or vouching for pre-existing chattels—are not typical of the sort of disclosures which are caught in the main current of history and sentiments giving vitality to the privilege. *Yet they are within the borders of its protection.* 8 Wigmore on

Evidence § 2264 (McNaughten rev. 1961).

(Emphasis added.)

It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). And in the case of Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886), which considered the Fourth and Fifth Amendments as running "almost into each other," it was held that:

"* * * any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used in evidence to convict him of crime or to forfeit his goods, is within the condemnation of (those amendments) * * *."

The facts upon which this special action was founded most certainly fall within the shadow cast by the authorities cited above. There was a disclosure sought from the petitioner by use of legal process (subpoena duces tecum) against him as a witness which was followed by a refusal to produce based upon the claim of a Fifth Amendment privilege.

Our disposition of this special action would be incomplete in the absence of a determination as to the extent of the immunity afforded petitioner by the provisions of A.R.S. § 13–1804. The statute, in addition to a grant of immunity from criminal prosecution, prohibits the subjection of the petitioner to any "penalty or forfeiture" on the basis of the evidence produced. The question with which we are faced is what is meant by the term "penalty or forfeiture."

It has been held that the term "penalty," when used in the context of the Fifth Amendment privilege to remain silent unless one chooses to speak in the unfettered exercise of his own will, and to suffer no penalty for such silence, means the imposi-

tion of any sanction which makes assertion of the privilege "costly." Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed. 2d 574 (1967). We are of the opinion, however, that such a broad interpretation of A.R.S. § 13–1804 would defeat the purpose of the statute. It would, in effect, prevent the use of the evidence produced in any and all subsequent proceedings, criminal or civil, which could affect and thereby prove "costly" to the petitioner.

If the meaning of the language in an act is doubtful, it should be given a construction, if possible, that will reconcile it with the general principles of the act. Odle v. Shamrock Dairy of Phoenix, 7 Ariz.App. 515, 441 P.2d 550 (1968). And where the language of the statute is susceptible of several interpretations, a court will adopt that which is reasonable and avoids contradictions and absurdities. State Board of Dispensing Opticians v. Schwab, 93 Ariz. 328, 380 P.2d 784 (1963).

> "In interpreting a statute a court looks to the subject of the act and the object which it intends to accomplish. When the subject matter is clearly ascertained and its general intent is determined, all words used in the act will be interpreted according to that intent. Thus, when the intent has been established, words may be modified, altered or supplied, and general words restrained and narrow words expanded so as to obviate any repugnancy or inconsistency with the general intention of the legislature." J. G. Sutherland, Statutes and Statutory Construction § 4814 (3d ed. 1943).

The general purpose of A.R.S. § 13–1804 is to enable the courts of this State to receive testimony and evidence which would ordinarily be constitutionally prohibited by the Fifth Amendment. The witness, in effect, may be compelled to exchange his privilege against self-incrimination for a grant of immunity. Inasmuch as the immunity afforded is intended to neutralize the claim of a Fifth Amendment privilege, this Court is of the opinion that the immunity granted by A.R.S. § 13–1804

is limited to the imposition of a criminal "penalty or forfeiture" and has no effect whatsoever on civil sanctions which could be imposed subsequent to the production of the allegedly obscene film. To hold otherwise would be to characterize the immunity statute as having a purpose, namely the introduction of evidence which is ordinarily privileged, while simultaneously failing to recognize a method by which such purpose may be realized by precluding the use of such evidence in any and all subsequent proceedings.

Our decision is in accord with that reached in Headley v. Baron, 228 So.2d 281 (Fla.1969). In Headley, the court interpreted the "penalty and forfeiture" provision of the following Florida statute which provided in pertinent part that:

> "* * * no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may so testify or produce evidence, documentary or otherwise, and no testimony so given or produced shall be received against him upon any criminal investigation or proceeding." Fla.Stat. § 932.29 (1965), F.S.A.

In discussing the limitations of immunity provisions, the Florida Supreme Court commented as follows:

> "Hence, it is said that the protection of the statutory immunity must be as broad as the constitutional privilege. Since the Constitution protects the individual against self-incrimination, the immunity granted in exchange for his testimony must in equal measure protect him from prosecution based on the testimony obtained in the bargain. *Actually, an immunity statute is not constitutionally compelled to extend the amnesty beyond the criminal aspect of the matter.* 8 Wigmore, Evidence §§ 2281, 2282 (McNaughten rev.1961)." (Emphasis added.) Headley v. Baron, supra at 284.

The problem with which we are faced is, therefore, as it was in HEADLEY, one of statutory construction rather than constitu-

tional interpretation. The Florida court construed their "penalty and forfeiture" provision in such a manner as to restrict the immunity granted to those situations in which the "penalty or forfeiture" imposed was criminal in nature.[3]

> "The words in the statute, viz. 'penalty or forfeiture' relate to any penalty or forfeiture which might arise out of or result from a conviction for one of the five crimes named in the statute. The word 'forfeiture' is used in the statute in the same sense as the word 'fine.' The expression 'fine and forfeiture' is a familiar one in criminal law and relates to punishment for the violation of a penal statute." Id. at 286.

We agree with this analysis and believe that it is directly applicable to the case which is presently before us. Accordingly, it is the holding of this Court that the immunity granted to petitioner by the provisions of A.R.S. § 13-1804 in the form of protection from a "penalty or forfeiture" is restricted to those penalties or forfeitures which are criminal in nature. We hold that should the City of Phoenix proceed with the civil action and secure an injunction in relation to *future* showings of the film in question, the injunction would not constitute a "penalty or forfeiture" for past acts but would be a prohibition against future similar acts.

Inasmuch as the respondent court ruled that the provisions of the Fifth Amendment and the privilege against self-incrimi-

nation did not apply to the petitioner under the circumstances of the case, this Court must hold that such a ruling constituted a failure to perform a duty required by law as to which he had no discretion, i. e., honor the petitioner's privilege against self-incrimination. This holding does not preclude our determination that The Honorable Rufus C. Coulter, Jr., Judge of the Respondent Superior Court, was unquestionably correct in compelling the production of the film in question since the immunity granted in A.R.S. § 13-1804 follows as a matter of law and insulates the petitioner from any criminal prosecution on the basis of any transaction matter or thing concerning which he testifies or produces evidence. The respondent court was not proceeding in excess of its legal authority by ordering petitioner to produce the film in court over petitioner's self-incrimination objection.

We hold that the trial court erred in its ruling as to the applicability of a Fifth Amendment privilege to the case at bar. Accordingly, the petition for relief is granted insofar as it requested special action with regard to the above ruling.

The issuance of the mandate in relation to this opinion will constitute an order vacating the restraint heretofore imposed by this Court, and hereinbefore quoted, and will permit the trial court to proceed in a manner consistent with this opinion.

HAIRE and JACOBSON, JJ., concur.

---

3. It is interesting to note that the Headley opinion specifically overrules three earlier decisions interpreting Florida's "immunity statute" in a manner which disallowed the imposition of civil sanctions as "forfeitures" prohibited by the statute. Florida State Board of Architecture v.

Seymour, 62 So.2d 1 (Fla.1952); State Beverage Department of Florida v. State ex rel. Zucker, 116 So.2d 640 (Fla.Dist. Ct. of App.1959); Hotel and Restaurant Commission v. Zucker, 116 So.2d 642 (Fla.Dist.Ct. of App.1959).