495 P.2d 519

**Henry SMITH, Petitioner,**

**v.**

**The SUPERIOR COURT, PIMA COUNTY, the Honorable Norman S. Fenton, Presiding, and The STATE of Arizona, real party in interest, Respondents.**

**No. 2 CA–CIV 1187.**

Court of Appeals of Arizona,
Division 2.

April 4, 1972.

Rehearing Denied May 4, 1972.
Review Denied June 13, 1972.

Green & Green by Jordan Green, Phoenix, for petitioner.

Rose Silver, Pima County Atty. by James M. Howard, Deputy County Atty., Tucson, for respondents.

HOWARD, Judge.

The denial of a motion to quash an information filed against the petitioner, defendant below, is challenged in this special action. Since we deem appellate intervention at this juncture of the proceeding appropriate, we have assumed jurisdiction to review the subject order.

In 1970, a civil action was commenced against the defendant and others, seeking damages for the alleged fraudulent conduct of the defendants. Alternatively, rescission of a stock purchase was sought. The complaint alleged that Smith was an officer and director of Smith & Associates Investment, Inc., and that the plaintiff, because of the defendants' fraudulent scheme, was induced to lend to the defendants the sum of approximately $120,000, and was given as security therefor, worthless shares of stock of Smith & Associates Investment, Inc.

Approximately six months after commencement of the civil suit, plaintiff filed a criminal complaint alleging that petitioner and others had sold her unregistered securities and had obtained property from her by false pretenses, all in violation of the law. Approximately a year later, an information was filed charging the defendants with sale of unregistered securities.

While the criminal action was pending, the plaintiff pursued various discovery procedures in the civil action. These included interrogatories, requests for admissions, requests for production of documents and subpoenas duces tecum. The defendants asserted their Fifth Amendment privileges and requested a stay of the civil proceeding until determination of the pending criminal proceeding. The court refused the requested stay for the reason that such postponement would greatly prejudice the plaintiff who was eighty-eight years of age and in poor health. The defendants' motion for a protective order relative to the plaintiff's discovery was denied and they were ordered to respond to interrogatories and requests for admissions and to comply with the request for production of documents. A formal written order to that effect having been entered on January 10, 1972, the petitioner complied fully therewith and thereby incriminated himself. (The State contends otherwise but we do not agree.)

Petitioner filed a timely motion to quash the information filed in the criminal case upon the ground that A.R.S. § 13–1804, as amended, granted him immunity from prosecution. This statute reads:

"§ 13–1804. Immunity from prosecution; application

If a witness in any judicial or grand jury proceeding claims the privilege against self-incrimination but is required by the court to give testimony or produce evidence, the witness shall not be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he testi-

fies or produces evidence. The witness may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order." [1]

The respondent court, in denying the motion to quash, stated in its minute entry:

"The Court feels that in enacting Section 13–1804, it was the legislative intent to grant witnesses immunity when they had been called by a prosecutor in a criminal case. The section appears designed to enable prosecuting officers, by granting immunity to witnesses in criminal prosecutions, to obtain testimony against the accused from a witness who has previously been protected against self-incrimination by Constitutional privilege.

It could not have been the legislative intent to permit civil litigants, inadvertently or intentionally, to thwart prosecution in criminal cases when the prosecutor is not even present to voice an objection at the time that the order is obtained.

However, the situation might be different if the defendants were able to show real prejudice in that the prosecutor was participating in the civil proceeding; was 'masterminding' the civil litigation as a device to obtain information not otherwise available; that the forced answers amounted to a judicial confession, etc."

The State's position was apparently accepted by the lower court, i. e., that the immunity statute does not apply to proceedings to which the prosecuting agency is not a party and is not available to witnesses other than those called by the prosecution.

■■ Whether the proceeding in which the incriminating evidence entitles the witness to immunity from prosecution depends on the terms and construction of the pertinent statutory provision. 22 C.J.S. Criminal Law § 46(4) (1961). As a general rule, the purpose of immunity statutes is to aid prosecuting officers in apprehending criminals, or those engaged in criminal enterprises, by inducing them or their confederates to turn state's evidence and tell on each other or to place at the disposal of the prosecuting attorney evidence which constitutional provisions granting a witness the privilege of refusing to testify against himself make unavailable. 22 C.J.S. Criminal Law § 46(2) (1961); 98 C.J.S. Witnesses § 439 (1957).

■ We do not agree with the lower court's construction of A.R.S. § 13–1804, supra, which does not limit its application to criminal prosecutions or to proceedings in which the State is a party. The following statement in Kilpatrick v. Superior Court, 105 Ariz. 413, 466 P.2d 18 (1970) aptly describes the judicial function in construing statutes:

"There is no magic in statutory construction and no legal legerdemain should be used to change the meaning of simple English words so that the resulting interpretation conforms the statute to the sociological and economic views of judges or lawyers. Words are to be given their usual and commonly understood meaning unless it is plain or clear that a different meaning was intended. [citations omitted] The word 'employer' is a well understood English word meaning one who employs someone else. It categorizes and classifies and, consequently differentiates between master and servant, those who do the hiring, the employers, and those who are hired, the employees. As between the two classes, employers and employees, the use of one inexorably excludes the other.

Courts are not at liberty to impose their views of the way things ought to be simply because that's what must have been intended, otherwise no statute, con-

---

1. This statute was added to the criminal code in 1969 and then read "if a witness in any judicial proceeding . . . ." In 1971, the statute was amended to read "if a witness in any judicial or grand jury proceeding . . . ."

tract or recorded words, no matter how explicit, could be saved from judicial tinkering. Moreover, if the sense of a word is not to be taken in its usual and commonly understood meaning except under circumstances where a different meaning is clearly intended, it becomes impossible for men to mean what is said or say what they mean and purposeful communication is unattainable." 105 Ariz. at 421–422, 466 P.2d at 26–27.

 It is only where the language of a statute is ambiguous that judicial construction is necessary and, where the language of the statute is plain and unambiguous, leading to only one meaning, courts must follow that meaning. Sloatman v. Gibbons, 104 Ariz. 429, 454 P.2d 574 (1969); Marquez v. Rapid Harvest Co., 1 Ariz.App. 562, 405 P.2d 814 (1965). We are of the opinion that the language of the immunity statute is plain and unambiguous requiring no resort to secondary rules of statutory construction to ascertain the legislative intent. The term "judicial proceeding" encompasses every proceeding before a competent court in the due course of law or administration of justice resulting in any determination or action on the part of the court. Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222 (1954); Jarman v. Offutt, 239 N.C. 468, 80 S.E.2d 248 (1954); Sorge v. City of New York, 56 Misc.2d 414, 288 N.Y.S.2d 787 (1968). Had the legislature intended the immunity statute to apply only to a limited class of judicial proceedings, namely criminal prosecutions or proceedings in which the State was a party, it could easily have done so. By use of the broad term "any judicial proceeding" it intended recognition of the Fifth Amendment privilege when invoked in a proceeding of a judicial nature. Therefore, when the petitioner, after invocation of his privilege against self-incrimination, was compelled to answer in the civil litigation he became, by operation of law, immune from prosecution as to the matters and transactions concerning which he was compelled to testify.

 Consideration of a statute's legislative history has been deemed appropriate where there is ambiguity in a statute. Roberts v. Spray, 71 Ariz. 60, 223 P.2d 808 (1950); City of Tucson v. Superior Court of Pima County, 2 Ariz.App. 25, 406 P.2d 227 (1965). Although resort to the legislative history is unnecessary here, since we find no ambiguity, it is interesting to note that the statute's history negates the State's claim that the legislature intended the prosecuting authority to be a party to the proceeding in which the claim of privilege is overruled.

The subject immunity statute was the result of adoption by the 29th Legislature of Senate Bill 3, as amended. Prior to its amendment to the form in which it was enacted into law, it read:

"IMMUNITY FROM PROSECUTION; APPLICATION

A. If a witness in any judicial proceeding claims the privilege against self-incrimination but is required by the court to give testimony or produce evidence as provided in the constitution or laws or this state granting immunity from prosecution, he shall not be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he testifies or produces evidence.

B. If a witness in any judicial proceeding refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby, *and if the prosecuting attorney, in writing, requests the court to order that person to answer the question or produce the evidence* the court after notice to the witness and hearing shall so order and that person shall comply with the order. After complying, and if, but for this section, he would have been privileged to withhold the answer given or the evidence produced by him, that person shall not be prosecuted or subjected to penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which, in accordance with the order, he gave answer or produced evidence. He may nevertheless i.e

prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accordance with the order." (Emphasis added) Journal of the Senate, 29th Leg., 1st Reg. Sess. 108 (1969).

The format of subsection B bears a resemblance to the Model State Witness Immunity Act which in substance provides for immunity from criminal prosecution when a witness in a criminal proceeding before a court or grand jury is compelled by the court to answer after request in writing by the prosecuting attorney. The deletion of any reference to the prosecuting attorney in the statute, as enacted, indicates that the legislature did not intend the limited application found by the lower court. Cf. State v. Scofield, 7 Ariz.App. 307, 438 P.2d 776 (1968), dissenting opinion.

The trial court is directed to enter an appropriate order not inconsistent herewith.

KRUCKER, C. J., and HATHAWAY, J., concur.