499 P.2d 103

William ANDERSON, Petitioner,

v.

The Honorable Rufus C. COULTER, Jr., Judge of the Superior Court, Maricopa County, Arizona, Respondent;

and

The CITY OF PHOENIX, a municipal corporation, Real Party in Interest.

No. 10721–PR.

Supreme Court of Arizona, In Banc.

June 29, 1972.

Rehearing Denied Sept. 12, 1972.

Richard J. Hertzberg, Phoenix, for petitioner.

Joe R. Purcell, City Atty. of Phoenix, by John A. LaSota, Jr., Asst. City Atty., Phoenix, for respondent and real party in interest.

CAMERON, Vice Chief Justice.

We granted the petition of the City of Phoenix to review a decision and opinion of the Court of Appeals which set aside the order of the Superior Court of Maricopa County denying the motion of the respondent-defendant, William Anderson, to quash a subpoena duces tecum in an obscenity action.

The question before us is as follows: In an obscenity case prior adversary hearing, may the defendant claim the privilege against self-incrimination when asked to produce a film which has been previously shown to the public and the existence and identity of which have been adequately established by the prosecution?

The facts necessary for a determination of this matter are as follows. On 8 June 1971 the City of Phoenix filed a complaint alleging that the defendant was operating a movie theater in Phoenix and on or about 26 May 1971 exhibited an obscene movie in violation of § 13–532, subsec. 2 A.R.S. The City asked for a hearing to determine why a preliminary injunction should not issue against further showing of the movie. On 9 June a subpoena duces tecum was served on the defendant, ordering him to bring the movie in question with him to a hearing. The subpoena duces tecum described the film as "* * * the motion picture presently being shown in Moviematic Machine #9 at the Ellwest Stereo Theatre at the above stated location," and then described in detail the plot of the film as well as the performers therein. The defendant made a motion to quash the subpoena duces tecum, based on his privilege against self-incrimination as set forth in the Fifth Amendment to the United States Constitution and Article II, Section 10 of the Arizona Constitution, A.R.S. The Superior Court ruled against the self-incrimination argument and denied the motion to quash the subpoena duces tecum. The court further ordered that the defendant be enjoined from showing the movie and that the matter be continued until 13 August.

Defendant filed a petition for special action in the Court of Appeals, Division One, and that court accepted jurisdiction. See Anderson v. Coulter and the City of Phoenix, 16 Ariz.App. 27, 490 P.2d 856 (1971). While reasoning that requiring the production of the film would violate defendant's privilege against self-incrimination if it were not for the criminal immunity statute, § 13–1804 A.R.S., the Court of Appeals held that the City could enforce the subpoena and continue its action for an injunction against future showings, but that defendant would be entitled to criminal immunity for past showings.

Insofar as the Court of Appeals has held that the film must be produced and that the future showings could be enjoined, we agree. We also agree with Judge Stevens' opinion that the testimonial immunity given a witness by virtue of the privilege against self-incrimination may

extend to documents and chattels: See 8 Wigmore On Evidence, § 2264, Mc-Naughton Rev. Edition, 1961; 4 Jones On Evidence 1609, § 857. We would further agree with the Court of Appeals that if the privilege applied in the instant case, immunity from criminal prosecution could be granted to the defendant while at the same time allowing the court to enjoin future showing of the film in question based upon a viewing of the film required to be produced.

We do not agree, however, that the immunity statute applies to the facts in this case.

Motion pictures are forms of expression protected by the First Amendment. Burstyn v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952). The First Amendment to the United States Constitution does not protect obscenity as such, Roth v. United States, 354 U.S. 476, 77 S. Ct. 1304, 1 L.Ed.2d 1498 (1957), but the United States Supreme Court as well as other courts have been very careful in obscenity cases to prevent any abridgement of the right of free people in a free society to the unobstructed expression and dissemination of non-obscene matters and to keep them free of prior restraint. It is for this reason that the Supreme Court has insisted that there be a "prior adversary hearing" whenever any attempt is made to seize an allegedly obscene film. Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), but see Roaden v. Kentucky, 473 S.W.2d 814 (1971), cert. granted, No. 71–1134, 11 CrL. 4023. At the prior adversary hearing, if the court determines, on the basis of a federal constitutional standard, that the film is entitled to the protection of the First Amendment, then that usually ends the matter. NGC Theatre Corp. v. Mummert, 107 Ariz. 484, 489 P.2d 823 (1971). This is not a protection enjoyed by citizens engaged in non-First Amendment matters. For them a search warrant may be issued and their illicit or contraband merchandise seized and held for trial on the issue.

Admittedly, the seizure of an obscene film can be sustained without the film as evidence:

"In our view appellants' fears (and those of the court of appeal) are groundless. So far as the *Fourth* Amendment is concerned, probable cause can be shown as it always has been shown—*ex parte* and, without recourse to the film itself, by a showing of obscenity through use of affidavits, testimony, or still photographs, such as was made here. All that *Books* requires in deference to the *First* Amendment is that before seizure a prior adversary hearing be afforded. Should the film exhibitors, on hearing, choose not to produce the film to rebut the showing of probable cause and should an order for seizure follow they would have waived any right to complain that the magistrate had failed to consider the film as a whole. Should the film exhibitors choose not to avail themselves of the opportunity afforded them for a hearing, they would effectively have waived their First Amendment rights and execution of a warrant for seizure forthwith would be entirely proper." Demich, Inc. v. Ferdon, 426 F.2d 643, 646 (9th Cir. 1970), vacated on other grounds, 401 U.S. 990, 91 S.Ct. 1223, 28 L.Ed.2d 528 (1971).

The fact remains, however, that obscene motion pictures present a particularly difficult problem for the prosecution. Even though the film is not necessary for the prior adversary hearing, it is certainly the best evidence as to whether the film is obscene. Both the prosecution and the trier of fact are aided in having the film present and viewable before the film is seized. The problem of this necessity and the privilege against self-incrimination were recognized by the California court:

"If the rule argued for by De Renzy be the law, then California's law enforcement authorities, under circumstances as here exist, are faced with a curious dilemma. They are permitted by the state and federal Constitutions, and directed

by statute, to enforce the state's obscenity laws. On the other hand they may not seize alleged obscene material, even under a search warrant, without a prior adversary proceeding. Any court process designed to compel production of the questioned material would obviously impinge upon the possessor's Fifth Amendment rights. (See Boyd v. United States, 116 U.S. 616, 634–635, 6 S.Ct. 524, 29 L.Ed. 746.) Thus, although seizure of obscene material is conditioned upon a prior adversary hearing, the state would be without power to produce the evidence essential to that hearing. This result is unreasonable and should be avoided." People v. De Renzy, 275 Cal. App.2d 380, 79 Cal.Rptr. 777, 779 (1969).

We believe that reliance upon the Fifth Amendment to prevent the production of a film that has been previously exhibited to the public is misplaced. Having the protection of the First Amendment and asserting it as the defendant does here, it seems to us both illogical and irrational to say, particularly where the item has been exhibited to the public, that the defendant may then rely upon the privilege against self-incrimination to refuse to produce the film at the prior adversary hearing.

We agree with Justice Traynor concerning the extent of the testimonial privilege:

"* * * When the prosecution has ample evidence of the existence, identity, and authenticity of documents in the defendant's possession and thus does not need to rely on his knowledge to locate and to identify them or on his testimony to authenticate them, it may be that his implied admission alone that the documents produced were those he was ordered to produce would involve too trivial a degree of incrimination to justify invoking the privilege. (See Maguire, Evidence of Guilt, pp. 22–23; Meltzer, Required Records, The McCarran Act, and the Privilege Against Self-Incrimination, 18 U.Chi.L.Rev. 687, 699–701.) * * *." Jones v. Superior Court of Nevada County, 58 Cal.2d 56, 22 Cal. Rptr. 879, 372 P.2d 919, 921, 96 A.L.R.2d 1213 (1962).

In this case, the prosecution's "ample evidence" of the "existence, identity, and authenticity" of the movie was expressly shown in the subpoena duces tecum. It is obvious that the prosecution had everything it needed to identify the film and compliance with the subpoena duces tecum did no more than produce the film already known by both the prosecution and the court to exist.

■ We believe that a person who exhibits to the public an allegedly obscene film has, by that showing, waived his right to claim his privilege against self-incrimination when subpoenaed to produce the film at the prior adversary hearing, provided the prosecution has properly identified the film to be produced.

■ We therefore hold that the defendant, in the instant case, may not claim the privilege against self-incrimination.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD, and HOLOHAN, JJ., concur.