518 P.2d 108

**STATE of Arizona, Petitioner,**

v.

**The Honorable Robert B. BUCHANAN, Judge of the Superior Court, In and For The County of Pima, State of Arizona, Respondent;**

**Judith Elaine SIGMAN, Real Party in Interest.**

No. 11423.

Supreme Court of Arizona, In Banc.

Jan. 24, 1974.

Rehearing Denied March 5, 1974.

Dennis DeConcini, Pima County Atty., by James D. Himelic, Deputy County Atty., Tucson, for petitioner.

Ed Bolding, Pima County Public Defender, by Norman R. Freeman, II, Deputy Public Defender, Tucson, for respondents.

HOLOHAN, Justice.

Respondent and real party in interest, Judith Elaine Sigman, was charged with two counts of unlawfully selling marijuana. Her first trial before a jury resulted in a mistrial. Thereafter the State and respondent Sigman waived trial by jury, and the trial was commenced before the respondent Judge. During the trial counsel for respondent Sigman moved to have immunity from prosecution granted to a defense witness whose testimony would exculpate the respondent Sigman but implicate the witness as involved in criminal activity. The State opposed the motion.

After hearing argument on the motion from the parties, the respondent Judge ruled that immunity would be granted to the defense witness. A continuance was granted by the trial judge so that a special action could be brought in this Court.

We accepted jurisdiction of the special action to determine whether A.R.S. § 13–1804, the immunity statute, extended to requests by the defense for immunity from prosecution for a witness called to testify upon behalf of the defense.

A.R.S. § 13–1804 provides:

"If a witness in any judicial or grand jury proceeding claims the privilege against self-incrimination but is required by the court to give testimony or produce evidence, the witness shall not be prosecuted or subjected to any penalty or forfeiture for, or on account of, any transaction, matter or thing concerning which he testifies or produces evidence. The witness may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or

failing to produce, evidence in accordance with the order."

Two cases decided in the Court of Appeals interpreting the legislative intent of the statute have been called to our attention. The first, Anderson v. Coulter, 16 Ariz.App. 27, 490 P.2d 856 (1971) was overruled on other gounds in Anderson v. Coulter, 108 Ariz. 388, 499 P.2d 103 (1972). *Anderson* dealt with a civil action by the City of Phoenix to have a motion picture declared obscene. The petitioner refused to produce the film claiming his Fifth Amendment privilege against self-incrimination. The Court of Appeals held that since the civil action was brought by the prosecuting authority immunity could be granted. We held that there was no privilege involved and vacated the opinion of the Court of Appeals. We agreed that if the privilege existed "immunity from criminal prosecution *could be granted* to the defendant". [108 Ariz. at 390, 499 P. 2d at 105. (Emphasis added).]

The second case, Smith v. Superior Court, 17 Ariz.App. 79, 495 P.2d 519 (1972), specifically held that the right to request immunity is not limited to cases in which a prosecuting authority is a party nor to criminal ⸀prosecutions. *Smith* initially involved a civil action for fraud. After the commencement of the action, the plaintiff in the civil suit filed a criminal complaint which ultimately resulted in an information being filed charging the defendants with the sale of unregistered securities.

In the course of discovery proceedings in the civil action, requests for answers to interrogatories, admissions and production of documents were made of the defendant, but he refused to answer claiming his Fifth Amendment privilege. The court ordered compliance with the requests and the defendant, under penalty of sanction, obeyed the court order and in doing so incriminated himself. He then moved to quash the information in the criminal case. The motion was denied, and the defendant sought relief by special action from the Court of Appeals, which court granted the

relief sought. Review was denied by this Court.

In *Smith* the Court of Appeals determined that the legislative history supported the position that the immunity statute was to apply to all judicial proceedings and could be invoked by any party. The Court of Appeals, in addition, found the immunity statute to be unambiguous and leading to only one meaning. We disagree.

▮▮▮▮ The language of A.R.S. § 13–1804 gives the authority to grant immunity to the court, but it fails to state upon whose application or request. Where a statute is ambiguous we are at liberty to construe the language. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964). For a proper interpretation of the statute we must look for the legislative intent. In re One 1965 Ford Mustang, 105 Ariz. 293, 463 P.2d 827 (1970).

In examining the legislative history of the act, we find that A.R.S. § 13–1804 was part of Senate Bill No. 3. Journal of the Senate, 29 Leg. 1st Reg. Sess. 1969. It was entitled:

"An Act relating to crimes; amending sections 13–106, 13–141, 13–241, 13–421, 13–423, 13–621, 13–916, 13–1649, 13–1650, 13–1712, 13–1825, 13–1881, 13–1882, and 13–1883, Arizona Revised Statutes, and amending title 13, chapter 7, article 1, Arizona Revised Statutes, by adding Sec. 13–1804." 29th Leg. 1st Reg. Sess. at 27.

When the Senate passed the act Senator Elliott made some revealing remarks in explaining his vote. They are as follows:

"Mr. President and Members of the Senate:

"I, as all members of this chamber, believe that we must have law and order if our country is to continue the prosperity it has enjoyed in the past. *The purpose of Senate Bill No. 3 is worthy as it is designed to aid the prosecution of those who violate our laws.* However, Section 13–1804 is in violation of the supreme court decision which insures protection of the individual. I believe this bill to be unconstitutional. There are other sec-

tions of the bill also questionable as to their constitutionality.

"Therefore, I vote 'No'." (Emphasis added.) 29th Leg. 1st Reg. Sess. at 140. It is clear that the purpose of the act was to aid the prosecution. This position becomes even clearer by reviewing some of the sections of the criminal code that were amended by Senate Bill No. 3.

The Bill provided that A.R.S. § 13–1712 be amended to allow *the state* to take an appeal from an order granting a motion to suppress evidence; that A.R.S. §§ 13–1881, 13–1882 and 13–1883 be amended to give *the state* the same opportunities for deposing witnesses within the state as had been allowed defendants; that A.R.S. §§ 13–1649 and 13–1650 be amended to provide among other matters that an allegation of prior conviction could be filed any time prior to trial. There can be no doubt that Senator Elliott was correct in his assertion that the purpose of the Bill was to aid the prosecution.

Generally, immunity statutes are enacted to aid the prosecution; and this proposition was recognized by the Court in *Smith*:

"As a general rule, the purpose of immunity statutes is to aid prosecuting officers in apprehending criminals, or those engaged in criminal enterprises, by inducing them or their confederates to turn state's evidence and tell on each other or to place at the disposal of the prosecuting attorney evidence which constitutional provisions granting a witness the privilege of refusing to testify against himself make unavailable. 22 C. J.S. Criminal Law § 46(2)(1961); 98 C. J.S. Witnesses § 439 (1957)." (17 Ariz. App. at 81, 495 P.2d at 521.)

Dean Wigmore in his treatise notes that statutes granting immunity are "applicable, ordinarily, to witnesses called by the prosecution only. Otherwise collusion with a defendant would enable an offender to secure immunity by his own contrivance in being called as a witness. . . ." Wigmore on Evidence, (3rd Ed.) Section 2282.

Immunity statutes similar to our statute have been held by other jurisdictions to be applicable only to instances in which the witness was called by the prosecution even though the statute in question did not specifically provide such limitation. See State v. Hennessey, 195 Or. 355, 245 P.2d 875 (1952); Nekoosa-Edwards v. News Publishing Co., 174 Wis. 107, 182 N.W. 919 (1921); People v. Allen, 32 Cal.App. 110, 162 P. 401 (1916); State v. Schell, Fla. App., 222 So.2d 757 (1969); In re Petraeus, 12 Cal.2d 579, 86 P.2d 343 (1939); State v. Perry, 246 Iowa 861, 69 N.W.2d 412 (1955); United States v. Dunham Concrete Products, 475 F.2d 1241 (5th Cir. 1973).

The nature of immunity statutes has been discussed in a number of decisions and in various treatises. The several decisions of the United States Supreme Court on the subject contain scholarly discussions on the nature, history, and effect of immunity. See Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892); Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819 (1896); Ullmann v. United States, 350 U.S. 422, 76 S. Ct. 497, 100 L.Ed. 511 (1956); Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). In the most recent decision on the subject of immunity the U.S. Supreme Court through Justice Powell stated:

"Immunity statutes, which have historical roots deep in Anglo-American jurisprudence, are not incompatible with these values. Rather, they seek a rational accommodation between the imperatives of the privilege and the legitimate demands of government to compel citizens to testify. The existence of these statutes reflects the importance of testimony, and the fact that many offenses are of such a character that the only persons capable of giving useful testimony are those implicated in the crime. Indeed, their origins were in the context of such offenses, and their primary use has been to investigate such offenses. Congress included immunity statutes in

many of the regulatory measures adopted in the first half of this century. Indeed, prior to the enactment of the statute under consideration in this case, there were in force over 50 federal immunity statues. In addition, every State in the Union, as well as the District of Columbia and Puerto Rico, has one or more such statutes. The commentators, and this Court on several occasions, have characterized immunity statutes as essential to the effective enforcement of various criminal statutes. As Mr. Justice Frankfurter observed, speaking for the Court in Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), such statutes have 'become part of our constitutional fabric.' [350 U.S.], at 438, 76 S.Ct., at 506." Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 1656–1658, 32 L.Ed.2d 212 (1972).

The granting of immunity to a witness involves an exercise of discretion in a matter of public policy, i. e., whether the public interest would best be served by exchanging immunity from prosecution for testimony. Absent a clear showing to the contrary, a statutory grant of immunity is limited to the State for purposes of carrying out the legitimate demands of government.

Nor does the limitation of the use of immunity to the State violate due process, and counsel for respondents has been unable to cite any authority which holds that due process requires that the grant of immunity must be available to defense as well as prosecution. However, counsel for respondents urges that the principles announced in Wardius v. Oregon, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973) compel such a conclusion. We think not. *Wardius* held that due process forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants. Nothing in *Wardius* requires reciprocal immunity power for State and defendant.

Respondent Sigman is not prevented from exercising any right guaranteed by the Sixth and Fourteenth Amendments, but the witness called is entitled to the rights provided by the Fifth Amendment. Faced with a claim of the privilege against self-incrimination there is nothing in the Fourteenth Amendment which gives a criminal defendant the right to have immunity granted to the witness. There is no reciprocal right of immunity.

The compelling state interest in the effective enforcement of the criminal law is sufficient justification for the legislature to limit the grant of immunity to the State. Nothing is taken from the rights guaranteed to a criminal defendant by the State and Federal Constitutions. The defendant has never had a right to grant immunity to witnesses. The grant of immunity has traditionally belonged to the sovereign. Immunity statutes, at least those granting transactional immunity, have been compared to a grant of general amnesty. Brown v. Walker, *supra*. Immunity is an exercise of choice, i. e., to forego prosecution of one in order to carry out an important public interest in enforcement of the criminal law. It is a proper function reserved to government to carry out a vital public interest.

The order of the respondent Judge in granting the motion of the respondent Sigman for immunity to be granted to a witness to be called by the defense in the criminal trial was in excess of the court's jurisdiction; therefore the order is set aside and the trial of the case will continue in accordance with the views expressed herein.

Order set aside.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ. concur.