711 P.2d 647

**Gary PATCHELL, Petitioner,**

**v.**

**The STATE of Arizona, and the Superior Court of the State of Arizona, In and For the County of Pima, and the Honorable John Hawkins, a Judge Thereof, Respondents,**

**and**

**The STATE of Arizona, Real Party in Interest.**

**No. 2 CA–SA 0292.**

Court of Appeals of Arizona, Division 2, Department A.

Nov. 7, 1985.

Alpert, Fein & Hameroff, P.C. by Donn S. Alpert, Tucson, for petitioner.

Stephen D. Neely, Pima County Atty. by Alan Davidon, Tucson, for real party in interest.

OPINION

BIRDSALL, Presiding Judge.

In this special action, we are called upon to determine the validity of Arizona's "use immunity" statute, A.R.S. § 13–4064, under the Arizona Constitution. Because the issue presented is one of first impression, is narrowly framed, and is of statewide importance, we accept jurisdiction. For the reasons set forth below, however, we deny relief.

On June 21, 1985, petitioner was subpoenaed to testify before the Pima County grand jury. He appeared but refused to testify, asserting his Fifth Amendment privilege against self-incrimination. The state then requested the superior court to grant the petitioner use immunity and order him to testify pursuant to A.R.S. § 13–4064.[1] Following a hearing on Au-

---

1. A.R.S. § 13–4064 provides:

"In any criminal proceeding before a court or grand jury, if a person refuses to answer a question or produce evidence of any other kind on the ground that he may be incriminated thereby and if the prosecuting attorney, in writing, requests the court to order that person to answer the question or produce the evidence, the court may so order and that person shall comply with the order. When the court denies such a request, the court shall state its reasons for denial in writing. After complying, such testimony or evidence, shall not be used against the person in any proceeding or prosecution for a crime or offense concerning which he gave answer or produced evidence under court order. However, he may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed in answering, or failing to answer, or in producing, or failing to produce, evidence in accord-

gust 14, at which petitioner raised his constitutional objections to that statute, the state's request was granted. Pursuant to the court's order, petitioner again appeared before the grand jury on September 4, but he again refused to testify on Fifth Amendment grounds. He was brought before the court the same day, found in contempt, and committed to the county jail until he purged himself of the contempt.[2]

In his petition for special action to this court, petitioner argued that § 13–4064 was beyond the power of the legislature to enact and contravened the provisions of the Arizona Constitution pertaining to the privilege against self-incrimination and transactional immunity, as well as the Due Process, Equal Protection, and Privileges and Immunities provisions of both the state and federal constitutions. The difference between use and transactional immunity is:

> " 'Use immunity' prohibits witnesses' compelled testimony and its fruits from being used in any manner in connection with criminal prosecution of the witness; on the other hand, 'transactional immunity' affords immunity to the witness from prosecution for offense to which his compelled testimony relates." Black's Law Dictionary 677 (5th ed., 1979).

At oral argument petitioner withdrew all claims except those pertaining to the authority of the legislature to enact the use immunity statute. We therefore address only that issue.

Petitioner notes initially that the Arizona Constitution, as originally enacted, contained not only a prohibition against compulsory self-incrimination, Ariz. Const. Art. 2 § 10, but also a limited exception to that prohibition, Ariz.Const. Art. 2 § 19. This latter section provides:

> "Any person having knowledge or possession of facts that tend to establish the guilt of any other person or corporation charged with bribery or illegal rebating,

shall not be excused from giving testimony or producing evidence, when legally called upon to do so, on the ground that it may tend to incriminate him under the laws of the State; but no person shall be prosecuted or subject to any penalty or forfeiture for, or on account of, any transaction, matter, or thing concerning which he may so testify or produce evidence."

Thus, the government may compel incriminatory testimony in bribery and illegal rebating cases, but only upon a grant of complete immunity from prosecution, i.e., transactional immunity. Petitioner argues that because the drafters of the constitution specifically provided for a certain type of immunity (transactional as opposed to use immunity) and only with regard to certain designated offenses, the legislature has no authority to enact a statute providing for any other type of immunity or permitting immunity for compulsory testimony with regard to any other offenses. We disagree.

It has long been settled that "the power of the legislature is plenary and unless that power is limited by express or inferential provisions of the Constitution, the legislature may enact any law which in its discretion it may desire." *Whitney v. Bolin,* 85 Ariz. 44, 47, 330 P.2d 1003, 1004 (1958); see also *Harris v. Maehling,* 112 Ariz. 590, 545 P.2d 47 (1976). The fact that the constitution contains a self-executing provision on a particular subject, such as this one, does not prevent the legislature from acting on the same subject, so long as its statutes are "in harmony with the spirit of the constitution." *Roberts v. Spray,* 71 Ariz. 60, 69, 223 P.2d 808, 814 (1950). We see no conflict between the cited provisions of the constitution and A.R.S. § 13–4064. We find that the latter statute is indeed in

ance with the order. If a person refuses to testify after being granted immunity and after being ordered to testify as aforesaid, he may be adjudged in contempt and committed to the county jail. If the grand jury before which he was ordered to testify has been

dissolved, he may then purge himself by testifying before the court."

**2.** Oral argument in this matter, which was heard on October 22, was delayed at the behest of the petitioner.

**510**

harmony with the purpose behind the enactment of Article 2, § 19.

Petitioner refers us to the minutes of the drafting committee in support of his contention that the drafters intended to limit the grant of immunity. While it is true that the original proposal to permit immunity in all cases was amended to restrict its applicability only to the offenses enumerated, the amendment arose out of the concern of the drafters that the broad availability of immunity would produce conspiracies among co-defendants which would preclude prosecution of the more culpable, or perhaps preclude prosecution altogether. This concern is clearly addressed by the provisions of § 13–4064 which authorize only use, as opposed to transactional, immunity and which leave the determination of the propriety of the grant of immunity to the collective discretion of the prosecutor and the court. Although the practice of granting immunity from prosecution in exchange for compelled incriminating testimony predates the constitution, see *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the concept of use immunity is of relatively recent origin. While consonant in principle with the Fifth Amendment prohibition against compulsory self-incrimination, it does not preclude prosecution of the witness other than on the basis of his testimony or evidence derived therefrom. Further, by committing the decision whether to grant immunity to the prosecutor in the first instance and then to the court, the legislature has ensured that an appropriate determination will be made as to whether the public interest is best served by exchanging use immunity for testimony. See *State v. Buchanan*, 110 Ariz. 285, 518 P.2d 108 (1974).

The enactment of this legislation is clearly not prohibited by the constitution. Because we find the use immunity statute to be consistent with the purposes behind Article 2, sections 10 and 19, we deny relief.

HOWARD and FERNANDEZ, JJ., concur.